633 So.2d 595 (1993)
STATE of Louisiana
v.
Salvadore Andrew GAMBERELLA.
Nos. 93 KA 0829, 93 KA 0830.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
*598 Stephen Callahan, Asst. Dist. Atty., Houma, for plaintiff State of La.
Cleveland J. Marcel, Indigent Defenders, Houma, for defendant-appellant Salvadore Andrew Gamberella.
Before WATKINS, SHORTESS and FOGG, JJ.
FOGG, Judge.
Salvadore Andrew Gamberella was charged by bill of information with two counts of intentional exposure of AIDS virus, violations of La.R.S. 14:43.5. He pled not guilty and proceeded to trial on count one.[1] After trial by jury, he was convicted as charged on that count. The disposition of count two is not in this record. Subsequently, the state filed a bill charging defendant as a second felony habitual offender. See La. R.S. 15:529.1. After a hearing, the court found defendant to be a second felony offender and sentenced him to serve a term of ten years imprisonment at hard labor, with credit for time served. Defendant has appealed, urging ten assignments of error.

FACTS
On three days in June of 1989, defendant donated plasma at the Houma Plasma Center. By the time he returned to donate plasma a fourth time, the center had been notified that defendant's blood tested positive during the routine screening analysis for human immunodeficiency virus (HIV). HIV is the virus responsible for causing acquired immune deficiency syndrome (AIDS). When defendant returned to the center on June 19, 1989, a physician substitute called defendant into her office, notified him about the positive test results, and referred him to a physician.
Prior to receiving these test results, defendant had started dating the victim, a seventeen year old female. After the victim's eighteenth birthday in September of 1989 (and after defendant had been told he was HIV positive), the couple started engaging in sexual intercourse on a regular basis. Defendant did not tell the victim about the test results. Unaware that defendant was HIV positive, but concerned about becoming pregnant, the victim insisted that defendant use a condom during intercourse. Although defendant did not approve of the use of condoms, he wore them. In February of 1990, the *599 victim discovered she was pregnant, the result of a condom having failed in January. After discovering she was pregnant, the victim stopped providing condoms but continued having sexual relations with defendant. The couple's baby was born in October of 1990. Before the baby's birth, the victim and defendant started living together. They lived together until February of 1991, when the victim left, dissatisfied with defendant's abusive behavior.
In March of 1992, the victim was at the health unit for a routine examination; and, at her mother's urging, she asked to be tested for HIV. The tests performed on her blood revealed that she was HIV positive. According to the communicable disease specialist who told the victim about her test results, the victim was "floored" and very upset. When the victim's current boyfriend tested negative for the virus, through process of elimination the victim suspected defendant (her only other sexual partner) as being the person who transmitted the virus to her. She then filed a criminal complaint with the Terrebonne Parish District Attorney's Office. The victim testified that her son has been tested twice and has not tested positive for HIV.
The victim maintained that defendant never told her about his positive test results. She also indicated that she once asked defendant if he ever had been tested for AIDS. She had watched an educational program on AIDS which said that engaging in sexual relations with multiple partners placed a person at risk. Aware that defendant had had multiple partners before her, she was concerned. In response to her question, defendant showed her his blood donor card and said he never had been rejected for donating blood.
Testifying in his own defense, defendant denied ever having sexual relations with the victim before telling her he was HIV positive. He claimed that, early in their relationship, he warned her he might be HIV positive because he had been married to a prostitute. He also maintained that he told the victim about the positive test results about two days after the plasma center told him. Defendant indicated that, about a month after receiving the results from the plasma center, he saw his doctor. According to defendant, the doctor confirmed that he was positive and warned him that the only sure way to avoid transmission of the virus was to avoid sex entirely. The doctor also advised him to use a condom if he engaged in sexual relations and to tell his sexual partners that he was HIV positive. Defendant maintained that he followed the doctor's recommendations and informed his sexual partners and used condoms during sex.
Dr. William Brandon, the Chief of the Section of HIV at the LSU Medical Center and Medical Director of the HIV Outpatient Program at Charity Hospital in New Orleans, testified as an expert medical doctor in the field of diagnosis and treatment of HIV and AIDS. He explained that the HIV virus can be transmitted by seminal or vaginal fluids or by blood and that, although the virus can be found in urine, feces, and sweat, it had not been demonstrated that these bodily fluids have transmitted the virus. For adults, the two most common forms of transmission of the virus are sexual activity and sharing needles (in I.V. drug use). In sexual activity, unprotected sexual intercourse (either vaginal or anal) is the most likely manner of transmission. Oral sexual activity also places a person at risk. Dr. Brandon explained that not all exposures to the virus result in transmission. For example, if a person has unprotected sexual intercourse with an HIV-infected partner, the chance the non-infected person will become infected ranges from one in ten (if the infected partner is in the advanced stages of the disease) to one in a hundred (if the infected partner is less advanced). Dr. Brandon further explained that, within two months after becoming infected with the HIV virus, the person develops enough antibodies in his system to test HIV positive in laboratory tests. Following infection, the person goes through a latent phase in which there are no outward signs that he is carrying the virus. Within ten or eleven years after being infected, the person develops AIDS as a result of the HIV virus having suppressed the body's ability to fight infection. AIDS is diagnosed whenever *600 a person who is HIV positive develops one or more of certain conditions or infections.

DENIAL OF MOTION TO SUPPRESS
In two related assignments of error, defendant attacks the admission of medical tests which established that he tested positive for the presence of HIV. In the first assignment, defendant argues the court erred when it denied his motion to suppress the test results; and, in the second assignment, he argues the court erred when it overruled his objection to the introduction of testimony regarding the tests and the test results.
In the motion to suppress, defendant sought the suppression of all evidence concerning the results of tests performed on his blood. He claimed that, because the state secured the test results in violation of La. R.S. 40:1299.141-40:1299.147, the evidence should be suppressed. At the hearing held on the motion to suppress, the parties stipulated that the state secured the test results (from the South Louisiana Medical Center and the Alpha Therapeutic Corporation) through an investigative subpoena issued by the District Attorney's office.[2] The District Attorney's office apparently requested the test results after the victim filed a complaint with that office. After receiving the test results in this manner, the state filed a motion for disclosure of confidential HIV test results, arguing that disclosure of the test results was essential for adjudication of the criminal proceedings. Citing La.R.S. 40:1300.15(B)(1), the state asked the court to order the Houma Plasma Center, the Alpha Therapeutic Corporation, Dr. Mary Eschete (defendant's doctor), and the South Louisiana Medical Center to disclose the results of all HIV tests performed on defendant. At the hearing held on both defendant's motion to suppress and the state's motion for disclosure, the court denied the motion to suppress and granted the state's motion. The court ordered the disclosure of the test results, ordered that all pleadings connected with the state's application be sealed, and ordered that all subsequent proceedings concerning the application be conducted in camera.
Before the trial court, defendant relied on La.R.S. 40:1299.141-40:1299.147 entitled "Acquired Immune Deficiency Syndrome", which requires blood banks and blood storage facilities to test all donated blood for AIDS and prohibits health care providers from administering blood to a patient unless the blood tested negative for AIDS. La.R.S. 40:1299.142(A) & 40:1299.143. The results of tests performed on blood donated to blood banks or blood storage facilities may be released to only certain enumerated persons (the subject of the test; the treating physician; a health care provider who uses an anatomical gift; the coroner, funeral director, or other person who examines or prepares a body for burial; and certain employees in the Department of Health and Human Resources who prepare statistical information). La.R.S. 40:1299.142(B). A penalty is provided for violations of the statute. La.R.S. 40:1299.145.
On appeal, defendant does not rely on the provisions of La.R.S. 40:1299.141 et seq. Instead, he quotes the provisions of La.R.S. 40:1300.14, 1300.15, and 1300.16, and argues that, because the court's order for disclosure of the test results was issued after the state already had obtained the results, the court erred in permitting introduction of the evidence.
To encourage voluntary testing for HIV, the legislature enacted La.R.S. 40:1300.11-40:1300.16 ("Confidentiality of HIV Test Results"), to "assur[e] that HIV test results are not improperly disclosed" and to provide "clear and certain rules for the disclosure of such information." La.R.S. 40:1300.11. In addition to providing a list of persons and agencies to whom confidential HIV test results may be released (despite the patient's written refusal to release his HIV test results), *601 the statute provides that HIV test results may be released to "[a]ny person to whom disclosure is ordered by a court of competent jurisdiction." La.R.S. 40:1300.14(A) & (B)(8). Certain procedural requirements are established for the issuance of the court order. La.R.S. 40:1300.15.
Defendant argues that, because the state secured the court order after it already had secured the test results, the evidence was obtained illegally and should have been suppressed. Defendant does not otherwise contest the state's compliance with the procedural requirements of this set of statutes. On appeal, the state argues that the provisions of La.R.S. 40:1300.11-40:1300.16 have no application to the testing performed by the Alpha Therapeutic Corporation. The state does not address the application of La.R.S. 40:1299.141-40:1299.147.
We recognize that the state's use of an investigative subpoena to secure the test results violated the provisions of La.R.S. 40:1299.141-40:1299.147, and that the state's attempt to comply with the requirements of La.R.S. 40:1300.11-40:1300.16 came after it already had secured the test results. However, for the reasons which follow, we decline to apply the exclusionary rule in this case.
Defendant has no greater constitutional privacy interest in maintaining the confidentiality of the HIV tests performed on his donated blood than he would for any other medical evidence the state might seek. As the Louisiana Supreme Court indicated in Most v. Tulane Medical Center, 576 So.2d 1387 (La.1991) (per curiam), the privacy interests of an HIV-infected person who has donated blood may be outweighed under certain circumstances by the needs of a party who seeks disclosure. In Most, the Court found that an HIV-infected plaintiff's need to discover the identity of the HIV-infected person who donated blood the plaintiff received in a transfusion outweighed the donor's privacy interests and other public policy considerations. In the instant case, the state's interest in prosecuting defendant for his violation of La.R.S. 14:43.5 outweighed defendant's interest in maintaining the confidentiality of his test results. Clearly, a violation of La.R.S. 40:1299.142 occurred with the disclosure of the test results to the district attorney's office; a district attorney's office is not in the list of persons who are authorized to receive the results of AIDS tests which are conducted on donated blood. La. R.S. 40:1299.142(B). However, application of the exclusionary rule is not the appropriate remedy for this statutory violation. See generally State v. Barrilleaux, 620 So.2d 1317 (La.1993). Not all violations of statutory restrictions are deemed constitutional violations; and the exclusionary rule does not apply to all non-constitutional violations of statutes. See State v. Matthieu, 506 So.2d 1209 (La.1987).
Even if we assume that a violation of these statutes resulted in the deprivation of constitutional rights, unconstitutionally obtained evidence nevertheless may be admitted at trial if it would inevitably have been seized by law enforcement personnel in a constitutional manner. See Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); State v. Brumfield, 560 So.2d 534 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). The evidence shows the state ultimately secured a court order for disclosure of the test results. Accordingly, the court did not err in refusing to apply the exclusionary rule to this evidence.
These assignments of error are without merit.

CONSTITUTIONALITY OF STATUTE
In three related assignments of error (numbers 3, 4 and 5), defendant argues the court erred when it denied his motion to quash the bill of information. He specifically claims the court should have declared the intentional exposure of the AIDS virus statute unconstitutional on the grounds of unconstitutional vagueness, violation of the right to privacy, denial of due process, and denial of equal protection of the law. Defendant has not separately briefed the denial of due process argument and has incorporated it into his other arguments.
Statutes are presumed to be valid; whenever possible, the constitutionality of a statute should be upheld. State v. Brenner, 486 So.2d 101 (La.1986). Because a state *602 statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. State v. Griffin, 495 So.2d 1306 (La.1986). Attacks on the constitutionality of a statute may be made by two methods. The statute itself can be challenged, or the statute's application to a particular defendant can be the basis of the attack. Constitutional challenges may be based on either "vagueness" or "overbreadth." Griffin, 495 So.2d at 1308.
In this case, defendant does not attack the statute's application to his particular conduct but argues the statute is unconstitutional on its face because the elements of the statute are vague and the statute is overbroad. The constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that penal statutes describe unlawful conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning the statute's meaning and conforming their conduct thereto. State v. Azar, 539 So.2d 1222 (La.), cert. denied, 493 U.S. 823, 110 S.Ct. 82, 107 L.Ed.2d 48 (1989). See U.S. Const.Amend. XIV, § 1; La. Const. art. I, §§ 2 & 13. In addition, a penal statute must provide adequate standards by which the guilt or innocence of the accused can be determined. State v. Barthelemy, 545 So.2d 531 (La.1989). In determining the meaning of a statute and hence its constitutionality, penal statutes must be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La.R.S. 14:3. See Azar, 539 So.2d at 1224.
We find La.R.S. 14:43.5 clearly satisfies these requirements under the applicable rules of construction. Under the terms of the statute, the conduct proscribed is unambiguous:
No person shall intentionally expose another to any acquired immunity deficiency syndrome (AIDS) virus through sexual contact without the knowing and lawful consent of the victim.
La.R.S. 14:43.5(A) (prior to its amendment by 1993 La.Acts, No. 411, § 1).
Defendant maintains the intent element of the statute is uncertain. He implies that an infected person could violate the statute even if he is not aware of his HIV status. However, by use of the word "intentional" the statute clearly requires the state to prove the defendant was aware of his HIV status and aware the virus could be spread through "sexual contact." See C. Joseph, Criminal Procedure, Developments in the Law, 1986-1987, 48 La.L.Rev. 257 (1987).
Defendant also argues the exposure element is unclear. Noting that exposure is not synonymous with transmission, he appears to argue that, because a person can be exposed to the virus by activities which do not necessarily transmit the virus, use of the word exposure results in the statute's being unconstitutionally vague. He also asserts the statute does not make it clear if contact with virus-bearing fluids is required in order to have exposure. As the medical experts explained, not all exposures to the virus result in transmission of the virus. Expose is defined as "subject to risk from a harmful action or condition." Webster's Ninth New Collegiate Dictionary (1984). By use of the word "expose" rather than the word "transmit," the legislature obviously intended that the element of the offense be the risk of infection, rather than actual transmission of the virus. See C. Joseph, 48 La.L.Rev. at 282. The statute clearly does not require the state to prove the victim contracted the virus.
Defendant further notes that the phrase "acquired immunity deficiency syndrome (AIDS) virus" is a misnomer because the actual virus is the human immunodeficiency virus (HIV).[3] AIDS is not the virus but, rather, is a clinical syndrome which is diagnosed when a person, who is infected with the HIV virus, develops one of a certain list of infections. Despite the legislature's failure to correctly label the virus which causes AIDS, the language of the statute is not vague. As Dr. Brandon testified, although *603 the medical community makes a distinction between a person being HIV positive and having AIDS, "people have called it for years the AIDS virus."
Defendant argues the phrase "sexual contact" is vague because it "includes an almost limitless number of particular acts, most of which are not capable of transmitting the virus." While it is possible this terminology includes sexual acts which are not capable of transmitting the virus, the phrase "sexual contact" unambiguously describes the unlawful conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning the statute's meaning. As one commentator has suggested, "the term is obviously descriptive of numerous forms of behavior involving use of the sexual organs of one or more of the participants or involving other forms of physical contact for the purpose of satisfying or gratifying the `sexual desires' of one of the participants." C. Joseph, 48 La. L.Rev. at 282.[4]
Defendant finally argues that the phrase "without the knowing and lawful consent of the victim" is vague because the statute does not indicate what constitutes "lawful" consent over and above "knowing" consent. "Knowing" clearly refers to the victim's awareness that the defendant is infected with the virus which causes AIDS and that the virus can be spread through sexual contact. Although the term "lawful" implies nothing more than the sexual contact being voluntary, something already covered by the word "consent," use of the word "lawful" does not render the statute vague. See C. Joseph, 48 La.L.Rev. at 282-83.
In our view, the intentional exposure of the AIDS virus statute offers a clear and definite standard of conduct; and the words of the statute are readily understandable by an ordinary person of reasonable intelligence. The prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Rose v. Locke, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975) (per curiam). Defendant's argument is without merit.
Defendant also asserts the statute is invalid as overbroad. He argues that the statute prohibits conduct (such as kissing) which is incapable of transmitting the virus and that the statute interferes with the right to privacy. Individuals are protected from incursions by the state into certain areas of their lives by the Fourteenth Amendment of the United States Constitution; a statute is overbroad and, thus, constitutionally defective, if it extends state criminal authority beyond the proper reach of government into one of these protected areas. State v. Griffin, 495 So.2d at 1309. A person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it conceivably may be applied unconstitutionally to others, in situations not before the court. State v. Greco, 583 So.2d 825 (La.1991). Moreover, overbreadth invalidations are generally inappropriate when the allegedly impermissible applications of the challenged statute affect conduct rather than speech. State v. Neal, 500 So.2d 374 (La.1987). Defendant's conduct, engaging in sexual intercourse with the victim without having told her he was HIV positive, clearly is encompassed by the language of the statute. We find no merit in defendant's overbreadth argument.
We also reject defendant's claim that the statute violates the right to privacy. Defendant argues the statute interferes with the right of an HIV-infected person to engage in sexual activities. He also asserts that, for its enforcement, the statute depends upon evidence which cannot be obtained except in violation of a person's right to privacy.
Article I, § 5, of the Louisiana Constitution expressly guarantees that every individual *604 shall be secure in his "person" against "unreasonable searches, seizures, or invasions of privacy." One aspect of "liberty" protected by both the federal and the state constitutions is a right of personal privacy or a guarantee of certain areas or zones of privacy. This right of personal privacy includes the interest in independence in making certain kinds of important decisions. Among the decisions that an individual may make without unjustified government interference are personal decisions relating to marriage, procreation, contraception, family relationships, and child rearing and education. State v. Perry, 610 So.2d 746 (La. 1992). Under the Louisiana Constitution, the standard of "strict judicial scrutiny" is applied to review state action which imposes a burden on decisions as fundamental as those included within the right of personal privacy.[5] Under this test, the state action "may be justified only by a compelling state interest, and the state action must be narrowly confined so as to further only that compelling interest." Perry, 610 So.2d at 760.
The right of privacy is not absolute; it is qualified by the rights of others. Gannett River States Publishing v. Hussey, 557 So.2d 1154 (La.App. 2d Cir.), writ denied, 561 So.2d 103 (La.1990). Furthermore, the right of privacy does not shield all private sexual acts from state regulation. See Neal, 500 So.2d at 378. No one can seriously doubt that the state has a compelling interest in discouraging the spread of the HIV virus. Forcing an infected person to inform all of his sexual partners so the partner can make an informed decision prior to engaging in sexual activity furthers the state's interest in preventing the spread of the virus. Defendant argues the statute is not the least restrictive means which could have been chosen to accomplish the state's purpose. According to defendant, some absolutely safe forms of sexual contact are illegal under the statute. Defendant also appears to complain that the statute does not go far enough. The statute does not prohibit unprotected sexual intercourse with an infected person nor does it criminalize other methods of transmission (perinatal transmissions and blood-to-blood transmissions).[6] However, merely because the statute does not go as far as it could to discourage the spread of the virus does not result in the current version's being viewed as an invasion of privacy. Moreover, to the extent the statute criminalizes sexual conduct which might be incapable of spreading the virus, considering the uncertainty of the medical community concerning all aspects of this disease, the statute is narrowly drawn to further the state's compelling interest.[7]
Defendant briefly argues that the statute deprives him of the equal protection of the law based upon his physical condition. Under the Louisiana Constitution, when a law classifying individuals on the basis of physical condition is attacked, the proponent of the legislation must show that the law does not arbitrarily, capriciously, or unreasonably discriminate against the disadvantaged class by demonstrating that the legislative classification substantially furthers a legitimate state objective. La. Const. art. I, § 3; Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La. 1985) (on rehearing). See also DeSalvo v. State Department of Public Safety & Corrections, 624 So.2d 897 (La.1993).[8] We already *605 have upheld the constitutionality of this statute under the stricter standard applied upon review of the right to privacy issue. Accordingly, we find no merit in this argument.
For these reasons, these assignments of error are without merit.

DENIAL OF MOTION FOR POST-VERDICT JUDGMENT OF ACQUITTAL
In the sixth assignment of error, defendant maintains the court erred when it denied the motion for post-verdict judgment of acquittal. Defendant claims the state presented insufficient evidence of his guilt. He specifically contends the state failed to prove the victim did not consent to having sexual relations with him.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). See also La. C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305 (La.1988).
To establish defendant's guilt, the state was required to prove that defendant intentionally exposed the victim to the acquired immune deficiency syndrome virus through sexual contact without the victim's knowing and lawful consent. La.R.S. 14:43.5(A). Defendant contests the state's proof of the final element, lack of consent. He appears to argue that, because the victim voluntarily had sex with him (although without knowledge that he was infected with the virus), the sexual relations were consensual. This argument ignores the language of the statute, which qualifies the consent element as being "without the knowing and lawful consent of the victim." Only if the victim is aware that her sexual partner is carrying the virus and that sexual contact can spread the virus can the victim's consent to the sexual relations be considered "knowing and lawful." See C. Joseph, Criminal Procedure, Developments in the Law, 1986-1987, 48 La.L.Rev. 257 (1987).
The victim testified that defendant never told her he had tested positive for HIV. When the couple first started having sexual relations, the victim was the person who suggested that defendant wear a condom and her reason was for birth control. Indeed, although defendant wore the condoms, he did not like the idea of using them. After the victim became pregnant, she saw no use for the condoms and stopped buying them. At one point during the relationship, the couple discussed AIDS. The victim had watched an educational program about AIDS and learned that a person with multiple sex partners was at risk. Knowing that defendant had had multiple sex partners, the victim questioned defendant about whether or not he ever had been tested for AIDS. Defendant responded that he had been donating blood and his blood had not been rejected. When he displayed his blood donor card, the victim was satisfied.
Testifying in his own defense, defendant maintained that he warned the victim shortly after they met (and before any sexual relations) that there was a strong chance he was infected because of his previous marriage to a prostitute. He also claimed he told the victim about the positive test results shortly after being notified by the plasma center. In support of defendant's claim that he informed his sexual partners, defendant's current girlfriend, Peggy McMinn, testified that defendant told her he was HIV positive before they ever had any sexual relations.
The jury's decision to reject defendant's testimony as being incredible was rational. Although defendant admitted having shown the victim his blood donor card, he claimed this occurred one or two days after meeting the victim and prior to his being notified by the plasma center. Considering that the couple met sometime before they started dating at the end of May of 1989, but that defendant did not donate blood until June 9, 1989, defendant would not have had a blood donor card one or two days after meeting the victim. Thus, this testimony by defendant is incredible. Additionally, although McMinn testified that defendant had told her he was HIV positive, one of the arresting officers *606 testified that, when the police notified McMinn at the time of defendant's arrest that he had AIDS, McMinn fell to her knees, cried, lost control, and became hysterical. When the arresting officers asked McMinn if defendant had told her about his condition, she replied, "No, no, no."
It is well-settled that the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). The jury obviously believed the testimony of the victim and discredited defendant's testimony. This determination by the jury was rational and will not be overturned. Accordingly, the assignment of error is without merit.

DENIAL OF MOTION FOR NEW TRIAL
In the seventh assignment, defendant asserts the court erred when it denied the motion for new trial. Defendant adopts the arguments of the other assignments of error and appears to argue the cumulative error deprived him of due process. We have carefully reviewed each assignment of error and have found no reversible error. Furthermore, the combined effect of the incidents complained of did not deprive defendant of the right to a fair trial. There is no cumulative prejudicial impact nor is there a denial of due process. See State v. Copeland, 530 So.2d 526 (La.1988); State v. Williams, 610 So.2d 991 (La.App. 1st Cir.1992). The assignment lacks merit.

EXCESSIVE SENTENCE
In the eighth assignment, defendant contends the sentence imposed upon him is unconstitutionally excessive. He notes that he is dying from AIDS in prison and needs to be released in order to renew the treatment he was receiving before his incarceration.
After being sentenced, defendant orally moved for reconsideration of his sentence on the ground the sentence was "excessive." Thus, he has preserved for appeal the claim of unconstitutional excessiveness. See State v. Mims, 619 So.2d 1059 (La.1993) (per curiam).
Initially we note that the sentence imposed on defendant is well within the statutory limits. The penalty for a person convicted of intentional exposure to the AIDS virus and sentenced as a second felony habitual offender is a term of imprisonment with or without hard labor for not less than five years nor more than twenty years. See La.R.S. 14:43.5(B) (prior to its amendment by 1993 La. Acts, No. 411, § 1) & 15:529.1(A)(1) (as amended by 1989 La.Acts, No. 482, § 1, effective September 3, 1989).
In sentencing defendant, on December 14, 1992, the court did not refer to the Louisiana Sentencing Guidelines, which became effective on January 1, 1992. See 17 La.Reg. 1186 (Dec. 20, 1991). However, before imposing sentence, the trial court stated that defendant had been placed on probation after being convicted of "simple burglary" and that the probation had been revoked. The court also stated that defendant was ineligible for probation as a second offender and was in need of a custodial environment where he would be unable to violate the law. (As is evident from the evidence presented at the habitual offender hearing, defendant's prior conviction was for attempted simple burglary, not simple burglary.)
Neither before the trial court, nor before this court, has defendant complained that the sentencing judge failed to consider the new sentencing guidelines or that the judge failed to cite sufficient factors to justify the sentence. Defendant's sole complaint on appeal appears to be that he was not placed on probation which would allow him to continue with his experimental treatment. However, because defendant was sentenced as a second felony habitual offender, he was not eligible for probation. See La.R.S. 15:529.1(G).
At the hearing held on defendant's motion to reconsider sentence, defendant introduced a letter from the Tulane-LSU Aids Clinical Trials Unit which indicated that defendant was a volunteer patient receiving medications in a study and that defendant would not be allowed to continue the therapy if he entered prison. The letter also stated that defendant's continued participation in the program would be an important contribution to the national database used to determine the best *607 antiviral therapies for AIDS. Defendant also presented the testimony of his live-in girlfriend, Peggy McMinn. McMinn testified that she was planning to marry defendant and that, since she started seeing him, he had not been having sex with any other women.
In reviewing defendant's claim that his sentence of ten years imprisonment is unconstitutionally excessive, we note that the trial judge has wide discretion, although not unbridled, in the imposition of a sentence within statutory limits. See State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence will be determined to be excessive if it is grossly disproportionate to the crime, or is nothing more than the needless imposition of pain and suffering. The determination turns upon the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate that it shocks our sense of justice. State v. Waguespack, 589 So.2d 1079 (La.App. 1st Cir.1991), writ denied, 596 So.2d 209 (La.1992).
Although the trial court did not give extensive reasons for the sentence, the record supports the sentence imposed. Article 881.4(D) of the Code of Criminal Procedure provides that "[t]he appellate court shall not set aside a sentence for failure to impose a sentence in conformity with the sentencing guidelines or for excessiveness if the record supports the sentence imposed." In addition to having a prior felony conviction for attempted simple burglary, by his own admission at trial, defendant had used illegal drugs intravenously for four or five years before becoming involved with the victim. Defendant admitted that the doctor told him that the only sure way to avoid transmitting the virus was to avoid sex entirely. He also acknowledged that the doctor told him to use condoms if he engaged in sexual intercourse and to inform his partners. However, the evidence shows that defendant ignored this advice entirely. He did not inform the victim, did not inform his current girlfriend (until the time of his arrest), and did not inform his baby's doctor. Considering defendant's blatant disregard for the welfare of the women he was involved with sexually, the sentence chosen by the court is not grossly disproportionate to the crime or the needless imposition of pain and suffering. The assignment of error lacks merit.

EXCESSIVE SENTENCE RESULTING FROM HABITUAL OFFENDER ADJUDICATION
In the ninth assignment, defendant asserts the sentence imposed upon him as a result of his adjudication as a habitual offender is constitutionally excessive. We have handled the unconstitutionality of the length of the sentence in connection with our treatment of assignment of error number eight.
In his brief, defendant actually argues the state failed to prove the five year cleansing period required by the habitual offender statute. Defendant did not assign this issue as error and did not amend his assignments of error. In accord with well-established jurisprudence, this court will not consider arguments which are neither assigned as error nor related to errors patent on the face of the record. State v. Williams, 319 So.2d 404 (La.1975). See also State v. Spears, 525 So.2d 329 (La.App. 1st Cir.), writ denied, 532 So.2d 175 (La.1988).
Furthermore, even if defendant were not procedurally barred from having this issue considered, there would be no merit to his argument. The habitual offender statute provides for a cleansing period as follows:
This Section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said five year periods.
La.R.S. 15:529.1(C). For a defendant who has been released from custody on parole, the date of discharge from parole supervision is equated with the expiration of the maximum sentence. State v. Vincent, 387 So.2d 1097 (La.1980); State v. Baker, 452 So.2d 737 *608 (La.App. 1st Cir.1984). See also State v. Williams, 580 So.2d 448 (La.App. 5th Cir. 1991).
As recognized by defendant, at the habitual offender hearing, the state did not prove the date defendant was discharged on the earlier sentence. However, the state introduced the record from defendant's prior felony conviction. The record shows that defendant pled guilty to attempted simple burglary on June 14, 1985, and was sentenced on the same date to serve a term of three years imprisonment and pay a fine of $100.00. The sentence was suspended and defendant was placed on supervised probation for a period of two years with special conditions. On April 18, 1986, the court revoked defendant's probation and made the previously imposed sentence executory. The state also introduced defendant's testimony given on cross-examination at the trial. Defendant testified that, after his probation was revoked on the prior conviction, he served seventeen months in jail before being paroled.
Although the state did not establish defendant's actual release date from parole supervision, according to defendant's testimony he would have been released from jail in September of 1987, less than five years before commission of the instant offense. Thus, the state was not required to prove the date of discharge on the earlier sentence. See State ex rel. Clark v. Marullo, 352 So.2d 223 (La. 1977); State v. Sanders, 542 So.2d 1134 (La. App. 3d Cir.1989). Defendant's argument is without merit.

REFUSAL TO GRANT POST-CONVICTION BAIL
In the last assignment, defendant contends the court erred when it denied his request for post-conviction bail pending appeal. The issue of whether or not the trial court has improperly refused bail is neither properly nor timely raised on appeal. The correct procedure is to invoke the supervisory jurisdiction of this Court through article 322 of Louisiana Code of Criminal Procedure. State v. Simmons, 414 So.2d 705 (La.1982). As is evident from this case, once a conviction has been either affirmed or reversed on appeal, the issue of post-conviction bail pending appeal is moot. State v. Landry, 583 So.2d 911 (La.App. 1st Cir.1991). Accordingly, this assignment of error is without merit.
For the foregoing reasons, the conviction and the sentence are affirmed.
AFFIRMED.
NOTES
[1] Our review of the record for patent error reveals that, at the arraignment, the court appointed the Indigent Defender Board to represent defendant and ordered that the Board be notified of the appointment. However, the minutes do not indicate defendant was represented by counsel at the arraignment or that he waived the right to counsel. Defendant was represented by counsel at all other court proceedings, and he proceeded to trial without objecting to the irregularity which occurred at his arraignment. Thus, any error in the arraignment was waived. See La.C.Cr.P. art. 555.
[2] No other evidence was introduced at the hearing. In reviewing this assignment, we are not limited to the evidence introduced at the motion to suppress hearing but may consider pertinent evidence introduced at other proceedings, including the trial of this matter. State v. Taylor, 553 So.2d 873 (La.App. 1st Cir.1989), writ denied, 558 So.2d 600 (La.1990). At the trial, the evidence revealed that Alpha Therapeutic Corporation performed the tests on defendant's blood after he donated plasma. The state did not introduce any evidence concerning any tests performed at the South Louisiana Medical Center.
[3] Recently the legislature amended this portion of the statute to read "acquired immunodeficiency syndrome (AIDS) virus." 1993 La.Acts, No. 411, § 1.
[4] Criminal statutes are not invalid as vague simply because it is difficult to determine whether or not certain marginal offenses fall with the statute's language. If the general class of offenses to which a statute is directed is plainly within its terms, the statute will not be struck down because hypothetical cases could be put where doubt might arise. State v. Jacobson, 459 So.2d 1285 (La.App. 1st Cir.1984), writ denied, 463 So.2d 599 (La.1985). See United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954).
[5] Because strict scrutiny is applied to this issue under our state constitution, it is not necessary for us to review this issue under the federal constitution to determine if defendant would be entitled to relief under that constitution.
[6] Recently the legislature amended the statute and expanded its coverage. In addition to continuing the provision applicable in the instant case, the amended version also regulates intentional exposure through "any means or contact" (defined as "spitting, biting, stabbing with an AIDS contaminated object, or throwing of blood or other bodily substances") and includes a special provision regulating the intentional exposure of the AIDS virus to a police officer through any means or contact. 1993 La.Acts, No. 411, § 1.
[7] In the words of Dr. William Brandon, the treatment of AIDS patients is an "evolving field."
[8] Because the standard applied under our state constitution apparently is stricter than that applied under the federal constitution, it is not necessary for us to review this issue under the federal constitution. See generally Leckelt v. Board of Commissioners of Hospital District No. 1, 714 F.Supp. 1377 (E.D.La.1989), aff'd, 909 F.2d 820 (5th Cir.1990).