STATE OF LOUISIANA
v.
JAVIER HERNANDEZ ROMERO
2007 KA 1810.
Court of Appeal of Louisiana, First Circuit
February 27, 2008
NOT DESIGNATED FOR PUBLICATION
Hon. DOUG MOREAU, District Attorney RONALD C. GATHE, Jr., DYLAN C. ALGE, Assistant District Attorneys Counsel for Appellee, State of Louisiana.
MARY E. ROPER, Counsel for Appellant, Javier Hernandez Romero.
Before: PARRO, KUHN and DOWNING, JJ.
DOWNING, J.
The defendant, Javier Hernandez Romero, was charged by bill of information with operating a vehicle without lawful presence in the United States, a violation of La. R.S. 14:100.13. The defendant filed a motion to quash the bill of information, arguing La. R.S. 14:100.13 is not an enforceable statute as it is preempted by federal law. Following a hearing, the trial court denied the motion to quash. The defendant withdrew his former plea and entered a plea of guilty as charged, reserving his right to appeal the trial court's ruling. The defendant was sentenced to six months imprisonment without hard labor.[1] The defendant now appeals, raising the following assignments of error:
1. La. R.S. 14:100.13 violates the Supremacy Clause of the United States Constitution because it unlawfully infringes on the federal government's plenary power over immigration.
2. The court erred in failing to grant the defendant's motion to quash because an arrest under the statute does not constitute a valid exercise of police power.
3. La. R.S. 14:100.13 is unconstitutionally vague.
4. The billing and prosecution of a violation of La. R.S. 14:100.13A as a felony caused a fundamental structural defect in the proceedings.
For the following reasons, we affirm the conviction and sentence.

FACTS
The following facts were presented as a basis for the guilty plea entered herein. On November 11, 2006, Alisha Robinson contacted the East Baton Rouge Parish Sheriffs Office to report an accident, wherein a vehicle crashed into the rear of her vehicle. When they arrived at the scene, officers asked the defendant (the driver of the vehicle that crashed into Robinson's vehicle) to present a driver's license. According to the record, the defendant did not have "his visa, passport or any other legal documentation." The defendant was charged with operating a vehicle without lawful presence in the United States. Based on the officers' observations, the defendant's performance on a field sobriety test, and the results of an intoxilyzer test, the defendant was also charged with DWI.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
In his first assignment of error, the defendant argues that La. R.S. 14:100.13 violates the Supremacy Clause of the United States Constitution by impermissibly regulating immigration. The defendant also argues that the statute overreaches into the field of immigration. The defendant contends that the statute conflicts with federal law as it interferes with the federal scheme for identifying illegal immigrants. Correspondingly, in assignment of error number two, the defendant contends that La. R.S. 14:100.13 is illegal due to the unconstitutional manner in which the State of Louisiana attempts to enforce its police powers in an area of law that is preempted by federal law.
The State contends that La. R.S. 14:100.13 is not preempted by federal immigration law, noting that the State retains authority to enact criminal laws. The State specifically argues that the trial court was correct in finding that La. R.S. 14:100.13 was not preempted by the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Title II, § 202, 119 Stat. 231, and that no deportation determination would be made pursuant to La. R.S. 14:100.13. The State contends that nothing in the REAL ID Act of 2005 expressly or impliedly prohibits a state from prosecuting a person for illegally driving a vehicle. The State further contends that federal immigration law does not prohibit a state from criminalizing conduct that a state believes to be a legitimate terror threat.
The Supremacy Clause declares that federal law "shall be the supreme Law of the Land[,] ... any Thing [sic] in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause requires invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties. Thus, the determination rests on whether the state law impermissibly interferes with federal law and is thus preempted. Pursuant to Article I, Section 8 of the U.S. Constitution, federal law has exclusive jurisdiction to regulate matters of naturalization and immigration. Nonetheless, federal regulations do not automatically preempt every state enactment which in any way deals with aliens. See De Canas v. Bica, 424 U.S. 351, 355, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976).
In De Canas, the Supreme Court set forth three tests to be used in determining whether a state statute related to immigration is preempted: (1) constitutional preemption, (2) field preemption, and (3) conflict preemption. Pursuant to De Canas, if a statute fails any one of the three tests, it is preempted by federal law. The court in League of United Latin American Citizens (LULAC) v. Wilson, 908 F. Supp. 755, 768 (C.D. Cal. 1995) set forth the following outline of the tests provided in De Canas:
Under the first test, the Court must determine whether a state statute is a "regulation of immigration." Since the "[plower to regulate immigration is unquestionably exclusively a federal power," [De Canas v. Bica, 424 U.S.] at 354, 96 S.Ct. at 936, any state statute which regulates immigration is "constitutionally proscribed." [De Canas, 424 U.S.] at 356, 96 S.Ct. at 936.
Under the second test, even if the state law is not an impermissible regulation of immigration, it may still be preempted if there is a showing that it was the "clear and manifest purpose of Congress" to effect a "complete ouster of state power  including state power to promulgate laws not in conflict with federal laws" with respect to the subject matter which the statute attempts to regulate. [De Canas, 424 U.S.] at 357, 96 S.Ct. at 937. In other words, under the second test, a statute is preempted where Congress intended to "occupy the field" which the statute attempts to regulate.
Under the third test, a state law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." [De Canas, 424 U.S.] at 363, 96 S.Ct. at 940 (citing Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Stated differently, a statute is preempted under the third test if it conflicts with federal law making compliance with both state and federal law impossible. Michigan Canners & Freezers v. Agricultural Marketing and Bargaining Board, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984); Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963).
The issue raised herein presents a question of law and is, therefore, subject to de novo review. State v. Smith, 99-2094, 99-2015, 99-2019, & 99-0606, p. 3 (La. 7/6/00), 766 So.2d 501, 504. In interpreting La. R.S. 14:100.13, we consider two established rules of statutory construction: (1) all criminal statutes are construed strictly, and (2) the words of a statute must be given their everyday meaning. See State v. Kujawa, XXXX-XXXX, p. 7 (La. App. 1st Cir. 2/22/06), 929 So.2d 99, 104, writ denied, XXXX-XXXX (La. 10/6/06), 938 So.2d 65. La. R.S. 14:100.13 provides as follows:
A. No alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States.
B. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver's license and immediately surrender such license to the office of motor vehicles for cancellation and shall immediately notify the INS of the name and location of the person.
C. Whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.
The statute was enacted by 2002 La. Acts, 1st Ex. Sess., No. 46, § 1. As part of the same act, the legislature enacted La. R.S. 14:100.11, which sets forth the findings of the legislature and the purpose of La. R.S. 14:100.12 et seq.:
A. The legislature finds that the devastating consequences of the barbaric attacks on September 11, 2001 on the World Trade Center and the Pentagon as well as the pervasive bomb threats and biological terrorism in various parts of the country were committed for the purposes of demoralizing and destabilizing our society and creating a climate of fear. These heinous deeds designed to kill, maim, and strike terror into the hearts of innocent citizens of this country cannot be tolerated, nor can those less violent acts to the infrastructure of our state which are designed to intimidate, confuse, and disrupt everyday commerce and the delivery of goods and services to the populace be permitted.
B. The legislature further finds that it is imperative that state laws be enacted to complement federal efforts to uncover those who seek to use the highways of this state to commit acts of terror and who seek to gain drivers' licenses or identification cards for the purposes of masking their illegal status in this state. Accordingly, the legislature finds that state law must be strengthened with a comprehensive framework for punishing those who give false information in order to obtain drivers' licenses or identification cards from the office of motor vehicles of the Department of Public Safety and Corrections, to limit the issuance of such documentation to correspond to the time limits placed by the federal Immigration and Naturalization Service on documentation, and to make operating a motor vehicle in this state when not lawfully present in the United States a crime.
Congress has exercised its power over immigration in the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (the "INA"). The INA is a comprehensive regulatory scheme which regulates the authorized entry, length of stay, residence status, and deportation of aliens. See Gonzales v. City of Peoria, 722 F.2d 468, 474-75 (9th Cir. 1983) (recognizing that the regulatory scheme created by the INA is so pervasive as to be consistent with the exclusive federal power over immigration). The INA delegates enforcement duties to the Immigration and Naturalization Service ("INS"). Because the federal government bears the exclusive responsibility for immigration matters, the states "can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states." Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 419, 68 S.Ct. 1138, 1142, 92 L.Ed. 1478 (1948). See also Plyler v. Doe, 457 U.S. 202, 225, 102 S.Ct. 2382, 2399, 72 L.Ed.2d 786 (1982). ("The States enjoy no power with respect to the classification of aliens.")
On May 11, 2005, Congress enacted the "Emergency Supplemental Appropriations Act For Defense, The Global War On Terror, Tsunami Relief, 2005," which includes as Division B, "The REAL ID Act of 2005." The REAL ID Act of 2005 provides that beginning three years after the date of its enactment, a federal agency may not accept, for any official purpose, a driver's license or identification card issued by a state to any person unless the state is meeting the requirements of the Act. The Act defines official purpose as including acts such as accessing federal facilities, boarding federally regulated commercial aircraft, entering nuclear power plants, and any other purposes that the Secretary of Homeland Security shall determine.
Subsection 202(c)(1) of the Act lists the types of identification information that must be provided before a state may issue a driver's license or identification card, and Subsection 202(c)(2) requires verification by valid documentary evidence of an applicant's citizenship or immigration status. Subsection 202(c)(3)(B) indicates that to satisfy a requirement of Subsections 202(c)(1) or (2), a state shall not accept any foreign document, other than an official passport.
While a driver's license from a noncomplying state may not be accepted by any federal agency for federal identification or any other official purpose, the Act does not mandate implementation by individual states. In other words, the REAL ID Act permits a state to issue driver's licenses and identification cards that do not conform to the Act's requirements.
In De Canas, the statute at issue provided that "[n]o employer shall knowingly employ an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers." De Canas, 424 U.S. at 352 n. 1, 96 S.Ct. at 935. Noting that in that case, California had "sought to strengthen its economy by adopting federal standards in imposing criminal sanctions against state employers who knowingly employ aliens who have no federal right to employment within the country," the Supreme Court found that the statute did not constitute an immigration regulation, but rather, had only "some purely speculative and indirect impact on immigration[.]" De Canas, 424 U.S. at 355-56, 96 S.Ct. at 936.
Further, in De Canas the Supreme Court emphasized that the mere fact that a state statute pertains to aliens does not require a finding of preemption: "the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power[.]" De Canas, 424 U.S. at 355, 96 S.Ct. at 936. The Court stressed, "the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." De Canas, 424 U.S. at 355, 96 S.Ct. at 936.
Herein, the trial court noted that the defense relied on the REAL ID Act in arguing that federal law preempts the statute in question. In denying the motion to quash, the trial court found that the REAL ID Act does not prohibit a state from including additional requirements for individuals who seek to operate a vehicle within the state. The trial court stated that the defense did not ask the trial court to rule on the constitutionality of the statute in general.[2] The defense objected to the trial court's ruling.
The defense cited State v. Lopez, XXXX-XXXX (La. App. 4th Cir. 12/20/06), 948 So.2d 1121, writ denied, XXXX-XXXX (La. 12/7/07), ___ So.2d ___, in the motion to quash. In concluding that La. R.S. 14:100.13 is preempted by federal regulations, the Fourth Circuit Court of Appeal found that the ultimate problem presented by La. R.S. 14:100.13 is that paragraph A places a burden on both legal and illegal aliens that exceeds any standard contemplated by federal immigration law. Lopez, XXXX-XXXX at p. 6, 948 So.2d at 1125. However, 8 U.S.C. § 1304(e) states:
Every alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him pursuant to subsection (d) of this section. Any alien who fails to comply with the provisions of this subsection shall be guilty of a misdemeanor and shall upon conviction for each offense be fined not to exceed $100 or be imprisoned not more than thirty days, or both.
This federal law requires aliens eighteen years of age or over who are legally present in the United States to at all times carry documentation of proof of alien registration. Thus, as evidenced by 8 U.S.C. § 1304(e), the Fourth Circuit is incorrect in determining that La. R.S. 14:100.13A places a burden on aliens that is not contemplated by federal immigration law.
The state of Louisiana is vested with the authority to regulate public roads and highways within the state under its police power, provided that the legislation does not prove repugnant to the provisions of the state or national constitutions. Kaltenbach v. Breaux, 690 F. Supp. 1551, 1553 (W.D. La. 1988). La. R.S. 14:100.13 involves a determination of who may or may not lawfully operate a vehicle in this state. The statute in question is not triggered by mere presence. Instead, the criminal act prohibited is the operation of a vehicle without proper documentation of lawful presence. Accordingly, the statute in question is not a constitutionally impermissible regulation of immigration because it does not involve a state determination of who should or should not be admitted into the country or the conditions under which a legal entrant may remain. Moreover, we do not find a clear and manifest purpose of Congress to effect a complete ouster of state power to regulate requirements for legal operation of a vehicle on public roads and highways within the state. Clearly, laws passed by Congress preempt conflicting state laws. Where there is no conflict, however, dual sovereignty allows complementary state and federal laws to exist. This court does not find that the REAL ID Act or any other federal law conflicts with the statute in question. The statute in question complements and augments federal law by reporting to the INS anyone caught without evidence of legal status.
The presumption is that Congress does not intend to preempt state law, unless it speaks with clarity otherwise. We note that the REAL ID Act is not presently in effect and will not be in effect before May 11, 2008. At any rate, the REAL ID Act is binding on federal agencies, not states. Any burden caused by a state's refusal to regulate will fall on those citizens who need to acquire and utilize alternative documents for federal purposes, rather than on the state as a sovereign. Thus, we agree with the trial court in finding that La. R.S. 14:100.13 is not preempted by federal law and in denying the motion to quash. These assignments of error have no merit.

ASSIGNMENT OF ERROR NUMBER THREE
In the third assignment of error, the defendant contends that the statute at issue is unconstitutionally vague. The defendant specifically argues that La. R.S. 14:100.13 is internally inconsistent and disjointed in that Subsections B and C both speak of operation of a vehicle without lawful presence as being the criminal offense, while Subsection A does not require actual unlawful presence, but only requires that alien drivers carry documentation of their legal presence. The defendant further contends that Subsection A does not have a penalty attached for failure to provide documentation. The defendant argues that the punishment in the penalty provision is based on the operation of a vehicle without lawful presence. Noting that the failure to provide documentation of lawful presence does not equate to actual unlawful presence, the defendant further argues that the statute does not delineate a punishment for operating a vehicle without having documentation of lawful presence. The defendant concludes that the acts constituting a crime under the statute are so ambiguous and vague that persons of ordinary intelligence must guess as to what was intended. Finally, the defendant adds that the statute does not provide guidance to assist a police officer in ascertaining whether a person is legally authorized to be in the United States.
The defendant has raised this issue for the first time on appeal. Ordinarily, a defendant is not entitled on appeal to complain of errors not raised below. La. Code Crim. P. art. 841. However, the Louisiana Supreme Court has consistently held that the facial unconstitutionality of a statute on which a conviction is based is an error discoverable by the mere inspection of the pleadings and proceedings, without inspection of the evidence. This issue is subject to appellate review under La. Code Crim. P. art. 920, even though the defendant did not raise the issue in the trial court and did not comply with the assignment of error procedure in La. Code Crim. P. art. 844 or with the contemporaneous objection rule of La. Code Crim. P. art. 841. State v. Hoofkin, 596 So.2d 536 (La. 1992) (per curiam). Also, the defendant is entitled to raise this issue, even though he entered a plea of guilty. State v. Crosby, 338 So.2d 584, 588 (La. 1976).
Statutes are presumed to be valid; whenever possible, the constitutionality of a statute should be upheld. Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. Attacks on the constitutionality of a statute may be made by two methods. The statute itself can be challenged, or the state's application to a particular defendant can be the basis of the attack. Constitutional challenges may be based upon vagueness. State v. Gamberella, 633 So.2d 595, 601-02 (La. App. 1st Cir. 1993), writ denied, 94-0200 (La. 6/24/94), 640 So.2d 1341.
In this case, the defendant does not attack the statute's application to his particular conduct, but he argues the statute is unconstitutional on its face because the elements of the statute are vague and the statute is overbroad. The constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that penal statutes describe unlawful conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning the statute's meaning and conforming their conduct thereto. Gamberella, 633 So.2d at 602. See U.S. Const. Amend. XIV, § 1; La. Const. art. I, §§ 2 & 13. In addition, a penal statute must provide adequate standards by which the guilt or innocence of the accused can be determined. In determining the meaning of a statute and hence its constitutionality, penal statutes must be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. La. R.S. 14:3; Gamberella, 633 So.2d at 602.
La. R.S. 14:100.13 clearly satisfies these requirements under the applicable rules of construction. Under the terms of the statute, the conduct proscribed is unambiguous. The statute requires alien drivers to carry proof of legal status and the penalty provision imposes punishment based on the failure to do so. These elements are plainly stated in Subsection A of the statute and Subsection C provides the penalty for a violation of the statute. We find that the statute describes the prohibited conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning the statute's meaning and conforming their conduct thereto. Thus, assignment of error number three lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In the fourth and final assignment of error, the defendant again argues that La. R.S. 14:100.13 does not specify a penalty for acts committed in violation of Subsection A. Contending that the statute does not specify a fine or sentence, the defendant argues that under La. R.S. 15:303 the criminal act described in Subsection A would be a misdemeanor. Based on those arguments, the defendant concludes that the billing and prosecution of his conduct as a felony caused a fundamental structural defect in the proceedings.
We note that this argument was not raised below. Nonetheless, the argument has been addressed based on the findings set forth in the review of the previous assignment of error. As stated, La. R.S. 14:100.13 does provide a penalty for the conduct prohibited in Subsection A of the statute. In accordance with Subsection C, whoever commits the instant crime, as delineated in Subsection A, shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both. As noted by the defendant, La. R.S. 14:2 defines a felony as a crime for which an offender may be sentenced to death or imprisonment at hard labor. The crime at issue clearly constitutes a felony.
Thus, based on the foregoing findings, the arguments raised in the final assignment of error are meritless.

DECREE
For the foregoing reasons, we affirm the defendant, Javier Hernandez Romero's, conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED
NOTES
[1] The cases involving defendant Javier Romero (district court number XX-XX-XXXX; 2007 KA 1810), Gabriel Reyes (district court number XX-XX-XXXX; 2007 KA 1811), and Jesus Gonzalez-Perez (district court number XX-XX-XXXX; 2007 KA 1813) were consolidated for the motion to quash hearing, Boykin, and sentencing proceedings.
[2] It appears that the trial court limited the defense preemption argument solely to the REAL ID Act. Nonetheless, based on our review of the motion to quash and the defense argument on the motion and out of an abundance of caution, we find that the defense adequately reserved the preemption arguments raised in assignments of error numbers one and two.