# IN THE SUPREME COURT OF IOWA

No. 33 / 04-0809

Filed August 4, 2006

**STATE OF IOWA**,

Appellee,

vs.

**ADAM DONALD MUSSER**,

Appellant.

---

Appeal from the Iowa District Court for Johnson County, L. Vern Robinson, Judge.

Defendant appeals his conviction of criminal transmission of human immunodeficiency virus in violation of Iowa Code section 709C.1(1)(*a*) (2001). **AFFIRMED.**

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins and Cristen Douglass, Assistant Attorneys General, J. Patrick White, County Attorney, and Victoria Dominguez, Assistant County Attorney, for appellee.

**TERNUS, Justice.**

The defendant, Adam Donald Musser, appeals his conviction of criminal transmission of human immunodeficiency virus (HIV) in violation of Iowa Code section 709C.1(1)(*a*) (2001). Musser claims the statute violates the First Amendment, is vague and overbroad, and infringes his right of privacy.[1] He also argues his twenty-five-year sentence constitutes cruel and unusual punishment. In addition to these constitutional claims, Musser challenges the admission of laboratory reports showing his HIV-positive status, asserting they lacked a proper foundation and contained inadmissible hearsay. Finally, the defendant raises a claim of ineffective assistance of counsel based on trial counsel's failure to object to the admission of the lab reports as a Confrontation Clause violation and failure to object to the prosecutor's opening statement and closing argument.[2] We find no merit in any of the issues raised on appeal, and therefore, we affirm the judgment of conviction and sentence.

I. *Factual Background and Prior Proceedings.*

The jury could have found the following facts from the evidence introduced at trial. The defendant had unprotected sexual intercourse with the victim, R.D., on three occasions in late 2002. At this time, he was HIV positive and was receiving medical treatment for this condition. Musser did not, however, tell the victim that he was HIV positive.

In April 2003, R.D. learned the defendant was HIV positive and contacted the police. Musser was charged with criminal transmission of

---

[1]Musser also asserts section 709C.1 violates the Equal Protection Clause and his right to procedural due process. We do not address these claims, however, because the defendant failed to raise these issues in the district court. *See State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997) ("Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal.").

[2]Although the defendant initially challenged the sufficiency of the evidence to support his conviction, he abandoned that issue at oral argument. Therefore, we do not address it.

human immunodeficiency virus in violation of section 709C.1(1)(*a*). This statute states a crime is committed if a "person, knowing that the person's human immunodeficiency virus status is positive, . . . [e]ngages in intimate contact with another person." Iowa Code § 709C.1(1)(*a*). The other person's knowing consent to exposure to the virus is an affirmative defense under chapter 709C:

> It is an affirmative defense that the person exposed to the human immunodeficiency virus knew that the infected person had a positive human immunodeficiency virus status at the time of the action of exposure, knew that the action of exposure could result in transmission of the human immunodeficiency virus, and consented to the action of exposure with that knowledge.

*Id.* § 709C.1(5).

The defendant filed a motion to dismiss challenging the constitutionality of section 709C.1(1), which was overruled by the district court. The case was subsequently tried to a jury, and the defendant was found guilty of criminal transmission of HIV. After his post-trial motions were overruled, Musser was sentenced to an indeterminate twenty-five-year prison term.[3] *See id.* §§ 709C.3, 902.9(2).

II. *Constitutional Challenges to Statute.*

We first consider Musser's various constitutional challenges to section 709C.1(1)(*a*). Our review of these claims is de novo. *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005).

We presume a statute is constitutional. *Id.* To overcome this presumption, a challenger must prove the unconstitutionality of the statute beyond a reasonable doubt. *Id.* This burden can be met only by refuting "

---

[3] In addition to the case involved in this appeal, the defendant was charged in three other cases with violations of section 709C.1(1)(*a*). He was convicted in all four cases and sentenced in each case to an indeterminate twenty-five-year prison term. Three of the sentences were ordered to run concurrently, but the sentence in this case was ordered to be consecutive.

'every reasonable basis upon which the statute could be found constitutional.' " *Id.* (citation omitted).

A. *First Amendment.* The defendant claims section 709C.1 offends the First Amendment to the United States Constitution because it "compels speech." Specifically, he argues an HIV-positive person engaging in intimate contact with another person can avoid criminal liability only by telling the potential victim that the person is HIV positive and educating the potential victim about the possible transmission of the virus. An infected person who has sexual relations with another without conveying this information is punished, he contends.

The legal principle upon which the defendant bases his argument is valid: the First Amendment safeguards not only "the right to speak freely," but also "the right to refrain from speaking at all." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 645, 63 S. Ct. 1178, 1189, 87 L. Ed. 1628, 1641 (1943) (Murphy, J., concurring). Moreover, the right to refrain from speaking encompasses not only thoughts and opinions; it applies "equally to statements of fact the speaker would rather avoid." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group*, 515 U.S. 557, 573, 115 S. Ct. 2338, 2347, 132 L. Ed. 2d 487, 503 (1995).

The State contends these principles are inapplicable here, however, because section 709C.1 does not compel speech. It points out the Iowa statute, unlike statutes from other states, does not expressly require an infected person to tell a potential victim that the person is HIV positive. *See, e.g.,* Mich. Comp. Laws Ann. § 333.5210 (2006) (making it a felony for an HIV-infected person to "engage[ ] in sexual penetration with another person without having first informed the other person that he or she . . . is HIV infected"). The State asserts the victim "could learn of the HIV status from any source."

Even though section 709C.1 does not explicitly require disclosure by the defendant, we think the practical effect of the Iowa statute is the same as those statutes mandating disclosure. To avoid violating section 709C.1, a defendant must rely on the consent defense set out in section 709C.1(5). Realistically, the only way a defendant can be assured the victim knowingly consents to exposure is for the defendant to tell the victim of the defendant's HIV status. The unlikelihood of the victim obtaining this knowledge in any other way is underscored by the confidential nature of this medical information. *See* Iowa Code § 141A.9(1) ("Any information, including reports and records, obtained, submitted, and maintained pursuant to this chapter [Acquired Immune Deficiency Syndrome (AIDS)] is strictly confidential medical information."); *see also id.* § 622.10 (preventing medical professional from disclosing confidential communications). In other words, the only way a potential victim will know the defendant is HIV positive is if the defendant discloses this fact or otherwise waives the privilege protecting this fact from disclosure by his treatment providers.[4] For this reason, we conclude the statute compels speech.[5] *Cf. People v. Jensen*, 586 N.W.2d 748, 758 (Mich. Ct. App. 1998) (concluding Michigan statute compelled speech).

This conclusion brings us to the critical issue: Does the statute's impact constitute an unconstitutional infringement of the defendant's free

---

[4] The limited disclosure allowed through the "partner notification program" set up in section 141A.5 does not alter our conclusion. The primary focus of that program is on persons "with whom the [infected] person *has had* sexual relations" or a person who "*is* a sexual partner" of the infected person. Iowa Code § 141A.5(3)(*a*), (*c*) (emphasis added); *accord* Iowa Admin. Code r. 641—11.40 (establishing a procedure for notification of "an identifiable third party who *is* a sexual partner of . . . a person who has tested positive for the human immunodeficiency virus" (emphasis added)). The program does not encompass a method for informing *future* sexual partners of the infected person's status.

[5] This court opined in *State v. Keene*, 629 N.W.2d 360, 364 n.3 (Iowa 2001), that section 709C.1 "does not implicate the First Amendment." Our observation was dicta, and we now disavow it.

speech rights?  *See Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 535, 100 S. Ct. 2326, 2332, 65 L. Ed. 2d 319, 326 (1980) (stating not every limitation on speech violates the Constitution).  In testing the constitutionality of section 709C.1 under the First Amendment, we choose the appropriate level of scrutiny based on "the nature of the speech taken as a whole and the effect of the compelled statement thereon."  *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796, 108 S. Ct. 2667, 2677, 101 L. Ed. 2d 669, 689 (1988).  If the affected speech is commercial speech or if the regulation is content neutral, an intermediate level of scrutiny applies.  *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642, 114 S. Ct. 2445, 2459, 129 L. Ed. 2d 497, 517 (1994) (stating "regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny"); *Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566, 100 S. Ct. 2343, 2351, 65 L. Ed. 2d 341, 351 (1980) (holding regulation of commercial speech is subject to an intermediate level of review).

The nature of the speech at issue here is clearly noncommercial.  Commercial speech is "expression related solely to the economic interests of the speaker and its audience."  *Cent. Hudson Gas & Elec.*, 447 U.S. at 561, 100 S. Ct. 2349, 65 L. Ed. 2d at 348.  The interests at stake in the intimate relationship providing the context for the speech regulated by section 709C.1 are plainly not economic.

In deciding whether the statute regulates speech on the basis of content, we find guidance in the following observations of the Supreme Court:

> [T]he "principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys." . . .  But while a content-based purpose may be

> sufficient in certain circumstances to show that a regulation is content based, it is not necessary to such a showing in all cases. Nor will the mere assertion of a content-neutral purpose be enough to save a law which, on its face, discriminates based on content.
>
> As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based. By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral.

*Turner Broad. Sys., Inc.*, 512 U.S. at 642-43, 114 S. Ct. at 2459, 129 L. Ed. 2d at 517-18 (citations omitted). An example of a content-neutral regulation is one that addresses "only the time, place, or manner of speech." *Consol. Edison Co. of N.Y., Inc.*, 447 U.S. at 536, 100 S. Ct. at 2332, 65 L. Ed. 2d at 327. "[T]he essence of time, place, or manner regulation lies in the recognition that various methods of speech, regardless of their content, may frustrate legitimate governmental goals." *Id.*; *accord Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2754, 105 L. Ed. 2d 661, 675 (1989) ("Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" (Citation omitted.)).

Applying these principles, we conclude section 709C.1 regulates speech on the basis of content. The focus of section 709C.1 is not on the time, place, or manner of expression, but on the content of the communication. The statute requires transmission of specific information—the infected person's HIV-positive status. *See Riley*, 487 U.S. at 795, 108 S. Ct. at 2677, 101 L. Ed. 2d at 688 ("Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech. We therefore consider the Act as a content-based regulation of speech."). The content-based nature of the statute is no less so because the state's primary intent is to limit the spread of AIDS. *See Turner Broad. Sys., Inc.*, 512 U.S. at 642-43, 114 S. Ct. at 2459, 129 L. Ed. 2d at 518 ("Nor will the mere

assertion of a content-neutral purpose be enough to save a law which, on its face, discriminates based on content."). In addition, the fact that the public interest undoubtedly supports the required disclosure does not change the nature of the statute as compelling the communication of specific facts the speaker would prefer not to reveal. *See Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1252 (6th Cir. 1997) ("As *Turner Broadcasting* makes clear, the real issue is whether the law is aimed at the communicative impact of speech.").

Because section 709C.1 is a content-based regulation, it is subject to strict scrutiny. *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813, 120 S. Ct. 1878, 1886, 146 L. Ed. 2d 865, 879 (2000) ("[C]ontent-based speech restriction . . . can stand only if it satisfies strict scrutiny."); *Turner Broad. Sys., Inc.*, 512 U.S. at 642, 114 S. Ct. at 2459, 129 L. Ed. 2d at 517 ("Laws that compel speakers to utter or distribute speech bearing a particular message are subject to [strict] scrutiny."). "If a statute regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest. If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy Entm't Group, Inc.*, 529 U.S. at 813, 120 S. Ct. at 1886, 146 L. Ed. 2d at 879 (citation omitted).

We believe section 709C.1 withstands strict scrutiny. The obvious purpose of this statute is the protection of public health by discouraging the transmission of the AIDS virus. As one court has explained,

> Considering the ease of transmitting AIDS and HIV through sexual penetration and the absence of any "cure," the state's interest in protecting the public health, safety, and general welfare of its citizenry becomes extremely significant. Although the statute may significantly infringe defendant's individual interests in remaining silent, the state's interest to compel her to disclose that she is HIV infected before engaging in sexual penetration is undeniably overwhelming.

*Jensen*, 586 N.W.2d at 759; *accord State v. Gamberella*, 633 So. 2d 595, 604 (La. Ct. App. 1993) ("No one can seriously doubt that the state has a compelling interest in discouraging the spread of the HIV virus."). We think section 709C.1 promotes a compelling state interest, and the legislature narrowly tailored the statute to promote this compelling interest. *See Gamberella*, 633 So. 2d at 604 (holding statute "[f]orcing an infected person to inform all of his sexual partners so the partner can make an informed decision prior to engaging in sexual activity . . . is narrowly drawn to further the state's compelling interest"). The statute does not absolutely prohibit an infected person from having sexual relations with another. Moreover, section 709C.1 does not compel public disclosure of an infected person's HIV status; an infected person may privately inform a potential sexual partner of his or her condition. We cannot conceive of a less restrictive way in which the state could accomplish its goal, and the defendant has not suggested such an alternative. We hold, therefore, that section 709C.1 does not unconstitutionally infringe the defendant's First Amendment free-speech rights.

B. *Vagueness.* "The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits vague statutes." *State v. Wiederien*, 709 N.W.2d 538, 542 (Iowa 2006).

> A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.

*Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 2498, 147 L. Ed. 2d 597, 621 (2000).

Musser claims the statutory prohibition of "intimate contact" between an infected person and another is unconstitutionally vague because the

statutory definition of "intimate contact" lacks clarity. Section 709C.1(2)(*b*) defines "intimate contact" as "the intentional exposure of the body of one person to a bodily fluid of another person in a manner that could result in the transmission of the human immunodeficiency virus." The defendant argues an ordinary person would not know what type of contact—mode of transmission—is prohibited. Consequently, he asserts, the statute is vague not only as applied to him, but facially as well. We discuss each claim separately.

1. *Vague as applied.* When considering a vague-as-applied challenge, we focus on whether the defendant's "conduct clearly falls 'within the proscription of the statute under any construction.'" *State v. Hunter*, 550 N.W.2d 460, 465 (Iowa 1996) (citation omitted), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306, 312 (Iowa 2000). In the case before us, Musser engaged in sexual intercourse with the victim. The question, therefore, is whether the definition of "intimate contact" gave the defendant fair warning that sexual intercourse fell within the statutory prohibition, in other words, involved the exposure of the victim to a bodily fluid that could transmit the virus.

This question was answered in *State v. Keene*, 629 N.W.2d 360 (Iowa 2001). This court took judicial notice in *Keene* of the fact that "sexual intercourse is one of the most common methods of passing the [human immunodeficiency] virus." 629 N.W.2d at 365. We concluded based on this common knowledge and related statutes[6] that "any reasonably intelligent person is aware it is possible to transmit HIV during sexual intercourse, especially when it is unprotected." *Id.* This court held, therefore, that the

---

[6]We cited two statutes in which "the risk of transmission during sexual intercourse" had been recognized: Iowa Code section 709C.1(1)(*b*) (referring to semen as a "potentially infectious bodily fluid") and Iowa Code section 915.40(11) (presuming significant exposure to HIV during sexual intercourse).

statute was not vague as applied to the defendant in *Keene*, who had had unprotected sexual intercourse with the victim. *Id.* at 366.

The same conclusion is warranted here. When the statute is read as a whole and considered in the light of common knowledge and related statutes, it clearly gives fair warning that the transfer of semen through sexual intercourse could transmit the virus and is, therefore, prohibited. Consequently, section 709C.1(1) is not vague as applied to Musser, who engaged in unprotected sexual intercourse with the victim.

2. *Facial vagueness and overbreadth.*

> [I]mprecise laws can be attacked on their face under two different doctrines. First, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when "judged in relation to the statute's plainly legitimate sweep." Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests.

*City of Chicago v. Morales*, 527 U.S. 41, 52, 119 S. Ct. 1849, 1857, 144 L. Ed. 2d 67, 77-78 (1999) (citation omitted). We conclude section 709C.1 passes constitutional muster under both doctrines.[7]

a. *Overbreadth.* Musser argues section 709C.1 impermissibly chills the exercise of infected persons' freedom of association. He suggests the statute could be interpreted to prohibit an infected person "from sweating on another while playing a game of basketball" or "from kissing another." Assuming such social contact is protected by the First Amendment, we

---

[7] A defendant to whom a statute can be constitutionally applied lacks standing to make a facial challenge to the statute "unless a recognized exception applies." *Hunter*, 550 N.W.2d at 463. One such exception is a situation in which the vagueness of the statute chills the exercise of First Amendment rights. *Id.* State courts are not required to apply the standing doctrine. *See Morales*, 527 U.S. at 55-56 n.22, 119 S. Ct. at 1858-59 n.22, 144 L. Ed. 2d at 79-80 n.22. Given this discretion, we choose not to address the standing issue and instead proceed directly to the merits of the facial vagueness challenge in the case before us.

disagree that the statute could be interpreted to apply to such interactions when they are not capable of transmitting HIV.

The statute clearly defines the proscribed contact: contact that exposes another to bodily fluid from the infected person "*in a manner that could result in the transmission of the human immunodeficiency virus.*" *See* Iowa Code § 709C.1(2)(*b*) (emphasis added). We have previously determined the state has a compelling interest in stopping the spread of HIV infections and AIDS, and the statute is clearly limited to contact that can spread these conditions. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623, 104 S. Ct. 3244, 3252-53, 82 L. Ed. 2d 462, 474-75 (1984) (finding infringement of associational rights constitutional in light of compelling state interest). In view of the state's compelling interest, the proscribed contact is not sheltered by the First Amendment. We conclude, therefore, that the statute simply "does not reach a substantial amount of constitutionally protected conduct." *Morales*, 527 U.S. at 52, 119 S. Ct. at 1857, 144 L. Ed. 2d at 78. For that reason, section 709C.1 does not violate the overbreadth doctrine.

b. *Facial vagueness.* The defendant claims the statute is facially vague because it does not define the modes of transmission that could result in transfer of the virus. We think the desired clarification is provided, however, by reference to common knowledge and related statutes. "A statutory term provides fair warning if the meaning of the word 'is . . . fairly ascertainable by reference to similar statutes, prior judicial determinations, reference to the dictionary, or if the questioned words have a common and generally accepted meaning.' " *Hunter*, 550 N.W.2d at 465 (citation omitted). In addition, a challenged statute should be viewed "in the context of the entire statutory scheme of which it is a part." *State v. Robinson*, 618 N.W.2d 306, 314-15 (Iowa 2000). We proceed to do that now.

Initially, we take judicial notice of the fact, as we also did in *Keene*, that "the HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid." 629 N.W.2d at 365. In addition, we note section 709C.1(1) prohibits not only intimate contact by an HIV-positive person, but also the transfer of semen "or other potentially infectious bodily fluids" for "insemination, or other administration to another person." Further clarification of the modes of transmission encompassed in chapter 709C is found in Iowa Code chapter 141A, a related statute dealing with AIDS. *See State v. Millsap*, 704 N.W.2d 426, 436 (Iowa 2005) (concluding statute gave fair warning when meaning was ascertainable by reference to related statutory definition). Section 141A.1(13) defines "infectious bodily fluids" as "bodily fluids capable of transmitting HIV infection as determined by the centers for disease control and prevention of the United States department of health and human services and adopted by rule of the department." The website of the Department of Health and Human Services' Centers for Disease Control and Prevention contains information detailing which bodily fluids transmit HIV, as well as an explanation of the ways in which HIV can be transmitted. *See* Divs. of HIV/AIDS Prevention, Ctrs. for Disease Control & Prevention, Dep't of Health & Human Servs., Fact Sheet: *HIV and Its Transmission, available at* http://www.cdc.gov/hiv/pubs/facts/transmission.pdf (July 1999); Divs. of HIV/AIDS Prevention, Ctrs. for Disease Control & Prevention, Dep't of Health & Human Servs., *Which Body Fluids Transmit HIV?*, http://www.cdc.gov/hiv/pubs/faq/faq37.htm (last updated Dec. 15, 2003).

When common knowledge and related statutes are considered, section 709C.1 provides "standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." *Morales*, 527 U.S. at 52, 119 S. Ct. at 1857, 144 L. Ed. 2d at 78. Therefore,

the statute does not violate the void-for-vagueness doctrine. *Gamberella*, 633 So. 2d at 603 (holding statute prohibiting "sexual contact" between infected person and another who has not given "knowing and lawful consent" was not facially vague).

C. *Right of privacy.*

> Under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, the state is forbidden from infringing on certain fundamental liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.

*In re Interest of C.S.*, 516 N.W.2d 851, 860 (Iowa 1994) (citing *Reno v. Flores,* 507 U.S. 292, 301-02, 113 S. Ct. 1439, 1447, 123 L. Ed. 2d 1, 16 (1993)). "If a fundamental right is not implicated, a statute need only survive a rational basis analysis, which requires . . . 'a reasonable fit between the government interest and the means utilized to advance that interest.'" *Seering*, 701 N.W.2d at 662 (citation omitted).

The defendant contends section 709C.1(1) infringes on his fundamental right to privacy. *See generally Griswold v. Connecticut*, 381 U.S. 479, 485, 85 S. Ct. 1678, 1682, 14 L. Ed. 2d 510, 515-16 (1965) (recognizing a protected right to privacy in the marriage relationship and the marital bedroom); *Eisenstadt v. Baird*, 405 U.S. 438, 453-54, 92 S. Ct. 1029, 1038, 31 L. Ed. 2d 349, 362-63 (1972) (holding privacy rights apply to individuals, married and single). He relies principally on the United States Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003). In *Lawrence*, the Court struck down a Texas statute "making it a crime for two persons of the same sex to engage in certain intimate sexual conduct." 539 U.S. at 562, 123 S. Ct. at 2475, 156 L. Ed. 2d at 515. The Court held the state's attempt to control private

sexual activity violated citizens' right to liberty under the Due Process Clause. *Id.* at 578, 123 S. Ct. at 2484, 156 L. Ed. 2d at 525-26.

We think *Lawrence* is readily distinguishable from the present case. As the Supreme Court noted in *Lawrence*, that case "involve[d] two adults who, *with full and mutual consent from each other*, engaged in sexual practices common to a homosexual lifestyle." *Id.* at 578, 123 S. Ct. at 2484, 156 L. Ed. 2d at 525 (emphasis added). The Court also observed the case before it did not "involve persons who might be injured or coerced." *Id.* In contrast, the statute challenged here prohibits intimate contact when there is *not* "full and mutual consent" from the infected person's sexual partner. Surely it cannot be disputed that one considering having sexual intercourse with another would want to know whether the other person is infected with HIV prior to engaging in such intimate contact. Consent in the absence of such knowledge is certainly not a full and knowing consent as was present in *Lawrence*. It is also significant that the sexual partner of an infected person is at serious risk of injury and even death from the prohibited sexual contact.

Although section 709C.1(1) infringes on Musser's privacy rights, we conclude the State has a compelling interest in discouraging the spread of the virus and protecting human life. *See Cruzan v. Director, Dep't of Health*, 497 U.S. 261, 282, 110 S. Ct. 2841, 2853, 111 L. Ed. 2d 224, 244 (1990) (holding "a State [has] an unqualified interest in the preservation of human life"); *Gamberella*, 633 So. 2d at 603 ("No one can seriously doubt that the state has a compelling interest in discouraging the spread of the HIV virus."). Moreover, as we have already determined, the statute is narrowly tailored to further this compelling state interest. For these reasons, the statute does not unconstitutionally infringe on the defendant's right to privacy and does not violate principles of substantive due process. *See*

*Gamberella*, 633 So. 2d at 603 (holding similar Louisiana statute did not violate defendant's right of privacy).

D.  *Eighth Amendment.*  "Criminal transmission of the human immunodeficiency virus is a class 'B' felony."  Iowa Code § 709C.1(3). Although this crime carries a twenty-five-year sentence, *see id.* § 902.9(2), it is not a forcible felony subject to restrictions on eligibility for parole or work release, *see id.* § 902.12.

Musser claims a twenty-five-year sentence for the criminal transmission of HIV constitutes cruel and unusual punishment in violation of the Eighth Amendment.[8]  *See* U.S. Const. amend. VIII.  The Eighth Amendment prohibits "sentences that are disproportionate to the crime committed."  *Solem v. Helm*, 463 U.S. 277, 284, 103 S. Ct. 3001, 3006, 77 L. Ed. 2d 637, 645 (1983).  The defendant claims the punishment provided for his crime fails the proportionality analysis set out in *Solem.*  463 U.S. at 292, 103 S. Ct. at 3011, 77 L. Ed. 2d at 650 (stating court should consider gravity of offense, harshness of penalty, "sentences imposed on other criminals in the same jurisdiction," and "sentences imposed for commission of the same crime in other jurisdictions").

As this court has previously noted, the *Solem* proportionality test is limited " 'to the rare case [in which] a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality.' "  *State v. Lara*, 580 N.W.2d 783, 785 (Iowa 1998) (citation omitted).  Therefore, our first inquiry is whether Musser's sentence

---

[8]Musser also challenges his sentence under the Iowa Constitution's prohibition of "cruel and unusual punishment." Iowa Const. art. I, § 17.  Because the Iowa prohibition is similar to the federal prohibition, we look to the interpretation of the federal constitution for guidance in interpreting the state provision. *State v. Izzolena*, 609 N.W.2d 541, 547 (Iowa 2000).  Because the defendant has not suggested any distinction between the analyses applicable to the state clause and the federal clause, we address the clauses together. *See In re Detention of Garren*, 620 N.W.2d 275, 280 n.1 (Iowa 2000).  Therefore, our discussion of the Eighth Amendment applies equally to Musser's claim under the Iowa Constitution.

appears grossly disproportionate in view of the gravity of his offense. *See State v. August*, 589 N.W.2d 740, 743 (Iowa 1999). This analysis is undertaken objectively without considering the individualized circumstances of the defendant or the victim in this case. *Id.*

Viewed objectively, we cannot say the punishment set by the legislature for the crime of criminal transmission of HIV is grossly disproportionate to the harm sought to be punished and deterred. HIV is "the causative agent of AIDS." Iowa Code § 141A.1(11). AIDS is a chronic, life-threatening condition. *See* MedlinePlus Medical Encyclopedia: *AIDS*, http://www.nim.nih.gov/medlineplus/ency/article/000594.htm (last updated Apr. 14, 2004) ("AIDS . . . is the final and most serious stage of HIV disease . . . . At the present time, there is no cure for AIDS. It has proven to be a universally fatal illness."). Clearly, the dire consequences of this crime can be significant and serious. The potential harm to the public welfare from the spread of this deadly virus is equally grave and severe.

Musser argues in his brief that his offense is "de minimis" because the victim did not become infected with HIV. But as noted above, in evaluating the proportionality of a sentence, we do not consider the circumstances of the particular case in which the challenge is made. *See State v. Ramirez*, 597 N.W.2d 795, 797-98 (Iowa 1999) (concluding twenty-five-year sentence for first-degree robbery was not cruel and unusual punishment, refusing to consider the gravity of defendant's specific conduct, which consisted of shoplifting knife and gun and then briefly brandishing knife toward store employee). Rather, we look at the harm the legislative provision was designed to prevent—the spread of HIV infections.

The defendant also claims a twenty-five-year sentence is excessive in view of the fact section 709C.1 does not require an intent to inflict injury or the occurrence of an injury at all. While section 709C.1 may not expressly

require an intent to *injure*, it does require the functional equivalent: that the defendant intentionally expose another person to the defendant's infected bodily fluid in such a way that the virus could be transmitted. *See* Iowa Code § 709C.1(2)(*b*).

The crime of criminal transmission of HIV is actually quite similar to the crime of first-degree robbery for purposes of proportionality analysis. First-degree robbery does not require an intent to inflict injury (only an intent to commit a theft), and it does not require that any actual injury result from the defendant's action. *See* Iowa Code §§ 711.1, .2. On the other hand, it does require that the defendant "purposely inflict[ ] or attempt[ ] to inflict serious injury" or be "armed with a dangerous weapon." *Id.* § 711.2. Based on the high "risk of death or serious injury to persons present when first-degree robbery is committed," this court has held that a twenty-five-year sentence for that crime is not grossly disproportionate, even though a defendant is required to serve at least eighty-five percent of the maximum sentence. *Lara*, 580 N.W.2d at 785, 786.

The same conclusion is warranted here. Infection with HIV carries the potential for serious injury, even death. Thus, a defendant who intentionally exposes another to the virus is just like the first-degree robber who attempts to inflict serious injury on his victim. And, just like the robber carrying a gun or a knife, a defendant infected with HIV is armed with a dangerous virus capable of inflicting serious injury or death on the victim. In view of the gravity of the offense, we cannot say a twenty-five-year sentence for the criminal transmission of HIV appears grossly disproportionate. Because there is no inference of gross disproportionality, we need not undertake the *Solem* analysis. The defendant's sentence does not constitute cruel and unusual punishment.

III. *Admission of Laboratory Reports.*

Over the defendant's objection, the trial court admitted two reports from the University of Iowa Hygienic Laboratory, showing the defendant had tested positive for HIV on two occasions. On appeal, the defendant renews his objections: (1) an inadequate foundation was laid for admission of the reports; and (2) the reports contained inadmissible hearsay. We, like the trial court, find no merit in the defendant's challenges to these exhibits.

A. *Foundation.* "Whether the [offering] party has established . . . a proper foundation is a matter committed to the sound discretion of the trial court; reversal is warranted only when there is a clear abuse of discretion." *Sechler v. State*, 340 N.W.2d 759, 764 (Iowa 1983); *accord Duncan v. City of Cedar Rapids*, 560 N.W.2d 320, 323 (Iowa 1997).

The State introduced the lab reports through the testimony of epidemiologist Randy Mayer, HIV coordinator of the Iowa Department of Public Health. Mayer testified the department is required by law to keep a record of persons who test positive for HIV. *See* Iowa Code § 141A.6. To ensure the department is aware of who has had a positive HIV test, all laboratories and physicians in Iowa are required to report any positive results directly to the department. *Id.* § 141A.6. Mayer also testified to the procedure for collecting specimens from persons being tested, and to the fact that a positive test is confirmed by a second test. He said the department contracts with several testing sites across the state to do free HIV testing, and one such site is the Free Medical Clinic in Iowa City. The department also contracts, according to Mayer, with the Hygienic Laboratory to test the specimens collected at the testing sites.

Mayer identified the two lab reports at issue in this case as being the defendant's HIV test results from the Hygienic Laboratory. He testified the department has these reports in its possession as part of its statutory

recordkeeping responsibility. The reports showed the Free Medical Clinic had collected two samples from the defendant, these samples were sent to the Hygienic Laboratory where they were tested in July 2000, and both test results were positive for HIV.

The defendant argues Mayer's testimony was inadequate because Mayer "did not conduct the tests, never met or examined Mr. Musser, had no knowledge of the protocol of the tests, or of the method of record keeping." But we do not think these matters are required for proper authentication or identification under Iowa Rule of Evidence 5.901.

Rule 5.901 provides in pertinent part:

> *a. General provision.* The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
> *b. Illustrations.* By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
> (1) *Testimony of witness with knowledge.* Testimony that a matter is what it is claimed to be.
> . . . .
> (7) *Public records or reports.* Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

Iowa R. Evid. 5.901. The foundation made through Mayer satisfied subparagraphs (1) and (7) of rule 5.901(*b*). Mayer testified the exhibits were lab reports showing HIV test results maintained by the department as required by law. This testimony established that the exhibits were "what [they were] claimed to be" and that they were records "from the public office where items of this nature are kept." Iowa R. Evid. 5.901(*b*)(1), (7); *see Spear v. McDermott*, 916 P.2d 228, 233 (N.M. 1996) ("All that is necessary is the testimony of a witness who knows that the documents in fact came from

the legal custodian of the document."); *State v. D'Alo*, 649 A.2d 498, 499 (R.I. 1994) (holding proper foundation existed for admission of defendant's driving record through testimony of employee of public office where such records are kept). The trial court did not abuse its discretion in admitting these exhibits over the defendant's foundation objection.

B. *Hearsay.* Our scope of review is well established:

> We review the defendant's hearsay claims for errors at law. "Hearsay . . . must be excluded as evidence at trial unless admitted as an exception or exclusion under the hearsay rule or some other provision." Subject to the requirement of relevance, the district court has no discretion to deny the admission of hearsay if it falls within an exception, or to admit it in the absence of a provision providing for admission. Inadmissible hearsay is considered to be prejudicial to the nonoffering party unless otherwise established.

*State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006) (citation omitted).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801. Clearly, the lab reports contained hearsay: the test results shown in the reports were conclusions of a lab technician who did not testify, and the results were offered to prove the truth of the matter asserted—that the defendant was HIV positive. *See State v. McCurry*, 544 N.W.2d 444, 446 (Iowa 1996) (holding DNA reports were hearsay); *State ex rel. Buechler v. Vinsand*, 318 N.W.2d 208, 210 (Iowa 1982) (holding paternity blood test results were hearsay).

Hearsay evidence is not admissible unless some exception allows its admission. Iowa R. Evid. 5.802. One exception is for records of regularly conducted activity, known as the business records exception:

> A memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions, or *diagnoses*, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and the regular practice of that

business activity was to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this subrule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Iowa R. Evid. 5.803(6) (emphasis added). This exception applies to hearsay falling within its scope even though the declarant is not shown to be unavailable. *See* Iowa R. Evid. 5.803.

We think the business records exception applies to the information contained in the exhibits challenged by the defendant. *See Ex parte: Dep't of Health & Envtl. Control, In re: State v. Doe*, 565 S.E.2d 293, 297 (S.C. 2002) (approving admission of HIV tests as a business record based on testimony of department-of-health employee). First, the lab report from the Hygienic Laboratory is the type of document encompassed in this exception: it is a "record . . . of [a] diagno[sis], made at or near the time by . . . a person with knowledge." Iowa R. Evid. 5.803. As the witness from the department of public health explained, the Hygienic Laboratory does the actual testing for the presence of HIV and prepares a report showing the results when the testing is completed. The witness also established it was "the regular practice of [the laboratory] to make the . . . report." *Id.* These reports are required by law and, according to the witness, all reports showing a positive HIV test are routinely forwarded to the department. Finally, the witness was qualified to give this testimony, as he was an employee of the agency designated by law as the custodian of these reports. We find nothing in the record or the defendant's briefing to indicate a lack of trustworthiness with respect to the Hygienic Laboratory or the method or circumstances of the reports' preparation. The trial court did not err in admitting the lab reports under the business records exception.

IV. *Ineffective-Assistance-of-Counsel Claims.*

Musser raises two claims of ineffective assistance of counsel. He asserts his attorney failed to object to the admission of the lab reports based on the Confrontation Clause. He also contends the prosecutor made improper statements in the opening statement and closing argument to which counsel should have objected.

To establish a claim of ineffective assistance of counsel, the defendant must show: (1) trial counsel failed to perform an essential duty; and (2) prejudice resulted from this failure. *State v. Scalise*, 660 N.W.2d 58, 61 (Iowa 2003). Counsel has no duty to raise an issue or make an objection that has no merit. *Id.*

> "Generally, ineffective-assistance claims are preserved for postconviction relief proceedings to afford the defendant an evidentiary hearing and thereby permit the development of a more complete record." If the record on appeal shows, however, that the defendant cannot prevail on such a claim as a matter of law, we will "affirm the defendant's conviction without preserving the ineffective-assistance-of-counsel claims." Conversely, if the record on appeal establishes both elements of an ineffective-assistance claim and an evidentiary hearing would not alter this conclusion, we will reverse the defendant's conviction and remand for a new trial.

*State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) (citations omitted).

A. *Confrontation Clause.* The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069, 13 L. Ed. 2d 923, 927-28 (1965). This constitutional provision reflects the "preference for face-to-face confrontation at trial and the right of cross-examination." *State v. Castaneda*, 621 N.W.2d 435, 444 (Iowa 2001). It is not to be equated with the hearsay rule. *See State v. Brown*, 656 N.W.2d 355, 361 (Iowa 2003). That is because "[t]he

Confrontation Clause bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." *Castaneda*, 621 N.W.2d at 444.

An out-of-court statement by a witness that is testimonial in nature is barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59-60, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177, 197 (2004). This prohibition applies even though the out-of-court statement is deemed reliable by the court. *Id.* at 61, 124 S. Ct. at 1370, 158 L. Ed. 2d at 199. Nontestimonial statements are not subject to scrutiny under the Confrontation Clause. *Davis v. Washington*, 547 U.S. ___, ___, 126 S. Ct. 2266, 2273, 165 L. Ed. 2d 224, 236 (2006).

The first question here, then, is whether the test results contained in the lab reports are testimonial or nontestimonial hearsay.

> Various formulations of [the] core class of "testimonial" statements exist: "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . ."

*Crawford*, 541 U.S. at 51-52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193 (citations omitted). In addition, statements in response to police interrogations that are "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator," are also testimonial statements subject to the Confrontation Clause. *Davis*, 547 U.S. at ___, 126 S. Ct. at 2276, 165 L. Ed. 2d at 240.

The test results at issue here are clearly nontestimonial. *See People v. Johnson,* 18 Cal. Rptr. 3d 230, 233 (Ct. App. 2004) ("A laboratory report does not 'bear testimony,' or function as the equivalent of in-court testimony." (Citation omitted.)); *Commonwealth v. Lampron,* 839 N.E.2d 870, 875 (Mass. App. Ct. 2005) (holding hospital records containing drug and alcohol test results were nontestimonial); *State v. Dedman,* 102 P.3d 628, 636 (N.M. 2004) (holding laboratory report of defendant's blood alcohol level was nontestimonial). The HIV tests were not requested by law enforcement; they were done two years before the crime at issue here was even committed. *Compare People v. Brown,* 801 N.Y.S.2d 709, 712 (Sup. Ct. 2005) (holding records of lab technicians who tested DNA samples were not testimonial because they "were not prepared solely for litigation" but for routine business purposes), *with State v. Crager,* 844 N.E.2d 390, 397 (Ohio Ct. App. 2005) (holding DNA reports prepared by state bureau of criminal investigation were testimonial because they were "prepared wholly in anticipation of litigation"). In addition, the statements were not given in response to structured questioning in an investigative setting or litigation context. *See State v. Staten,* 610 S.E.2d 823, 830 (S.C. Ct. App. 2005) (observing testimonial statements described in *Crawford* " 'all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings' " (citation omitted)). Although lab personnel possibly realized the report could be used in a later prosecution for criminal transmission of HIV, that use would be rare and certainly collateral to the primary purpose of providing the defendant and his medical providers with the information they needed to make informed treatment decisions. *Cf. Davis,* 547 U.S. at ___, 126 S. Ct. at 2276-77, 165 L. Ed. 2d at 240 (considering primary

purpose of police interrogation to determine whether responsive statements were testimonial or nontestimonial).

Because the reports are nontestimonial statements, an objection under the Confrontation Clause would have had no merit. Consequently, Musser's counsel did not fail to perform an essential duty when he did not raise this issue at trial.

B. *Prosecutorial misconduct.* The defendant contends the prosecutor committed prosecutorial misconduct in opening statement and closing argument and his counsel should have objected. In considering this claim, we are guided by the following principles:

> The prosecutor's duty to the accused is to "assure the defendant a fair trial" by complying with "the requirements of due process throughout the trial." Thus, while a prosecutor is properly an advocate for the State within the bounds of the law, the prosecutor's primary interest should be to see that justice is done, not to obtain a conviction.

*Graves*, 668 N.W.2d at 870 (citations omitted).

In order to establish a due process violation based upon prosecutorial misconduct, the defendant must first establish proof of misconduct. *Id.* at 869. We noted in *Graves* that "[a] prosecutor 'is entitled to some latitude during closing arguments in analyzing the evidence admitted in the trial.'" *Id.* at 874 (citation omitted). "[A] prosecutor may argue the reasonable inferences and conclusions to be drawn from the evidence," but may not suggest that the jury decide the case on "any ground other than the weight of the evidence" introduced at trial. *Id.* In addition, a prosecutor is not "'allowed to make inflammatory or prejudicial statements regarding a defendant in a criminal action.'" *Id.* (citation omitted). Nor is the prosecutor allowed to instruct the jury "to place themselves in the position of the victim." *Lucas v. State*, 335 So. 2d 566, 567 (Fla. Dist. Ct. App. 1976) ("The technique of asking jurors to place themselves in the position of the

victim has been held improper in both criminal and civil cases."); *see also Oldsen v. Jarvis,* 159 N.W.2d 431, 435 (Iowa 1968) ("Direct appeals to jurors to place themselves in the situation of one of the parties . . . [is] condemned by the courts."). These rules ensure the case is decided solely on the evidence.

Prosecutorial misconduct alone does not entitle a defendant to a mistrial, however. *See State v. Trudo,* 253 N.W.2d 101, 106 (Iowa 1977). There must be proof the misconduct resulted in prejudice to the extent the defendant was denied a fair trial. *Id.* In determining whether prejudice resulted, we consider several factors " 'within the context of the entire trial.'" *Graves,* 668 N.W.2d at 869 (citation omitted). These factors include the severity and pervasiveness of the misconduct, the significance of the misconduct to the central issues in the case, the strength of the State's evidence, the use of cautionary instructions or other curative measures, and the extent to which the defense invited the improper conduct. *Id.* We turn now to the facts of this case.

The defendant claims his trial counsel was ineffective for failing to object to the following italicized portions of the prosecutor's quoted statements:

> [State's Opening Statement]: At the end of the trial, I will have the opportunity to come back and stand here before you and ask you to find the Defendant guilty. And I will do that for two reasons. First of all, because the evidence in this case will only point you in that direction. *And, second, because it is the right thing to do.*

> [State's Closing Argument]: We submit to you that in December of 2002, two and a half years after he knew he was HIV positive, this man did not care. Either he was in denial or he was angry about the fact that, out of everyone in this world, he was afflicted with HIV. And at the point in time that you don't care about yourself, you care less about somebody else. When he met the victim in this case, the least he could have done was be honest with her. The least he could have done

was respect her life. But when the time came, the only thing he said was, "I ain't got nothing," and that is not true.

*I am asking you to find the Defendant guilty, not only because the State proved all the elements of the offense, but because the only way that he will care is if you make him care.*

[State's Rebuttal Closing Argument]: The only thing you need in order to decide this case is the evidence that was presented in this matter. That evidence is the testimony of those five witnesses that came in here and took the oath and told you what they knew about this case, and the exhibits. That's all you need. Find him guilty. *Make him responsible because, if you don't, no one will.*

(Emphasis added).

Although the defendant claims the prosecutor improperly vouched for the credibility of witnesses, injected her personal belief of the defendant's guilt into her statements to the jury, and asked the jurors to place themselves in the position of the victim, we agree with the State that nothing in the quoted statements can be construed in this manner. The defendant is correct, however, when he asserts the prosecutor improperly urged the jurors to decide the case on something other than the evidence.

The ABA Standards for Criminal Justice state: "The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence." ABA Standards for Criminal Justice 3-5.8 (3d ed. 1993); *see also id.* commentary ("Predications about the effect of an acquittal on lawlessness in the community also go beyond the scope of the issues in the trial and are to be avoided."). *See generally United States v. Young,* 470 U.S. 1, 8, 105 S. Ct. 1038, 1042, 84 L. Ed. 2d 1, 7-8 (1985) (relying on ABA Standards in considering claim of prosecutorial misconduct, noting the Standards were "useful guidelines"); *State v. Williams,* 334 N.W.2d 742, 745 (Iowa 1983) (relying on ABA Standards in reviewing allegations of prosecutorial misconduct). Although there is always some gray area between proper and improper argument, we think

the prosecutor here inappropriately diverted the jury from its duty to decide the case solely on the evidence by injecting issues broader than the guilt or innocence of the defendant and by making predictions of the consequences of the jury's verdict. Whether the defendant should be made to care is not a reason independent of the evidence for a finding of guilt, yet that is what the prosecutor suggested when she told the jury to find the defendant guilty "*not only because the State proved all the elements of the offense*, but because the only way that he will care is if you make him care." (Emphasis added.) Similarly, whether a finding of guilt is "the right thing to do" in an abstract sense is not the issue, yet that is what the prosecutor implied when she said she would ask for a guilty verdict based on the evidence "[*a*]*nd* because it is the right thing to do." (Emphasis added.) *See Impson v. State*, 721 N.E.2d 1275, 1283 (Ind. 2000) (holding prosecutor's request that the jury "do the right thing" was "an improper statement" insofar as it urged the jury to act for reasons other than the evidence); *Lisle v. State*, 937 P.2d 473, 482 (Nev. 1997) (holding prosecutor's statements to the jury that it must be "accountable" and "do the right thing" were improper). The issue in any criminal case is ultimately one of guilt or innocence as shown by the evidence. The prosecutor here improperly attempted to broaden the jury's duty to include a responsibility to do the right thing and to make the defendant care. *See Trudo*, 253 N.W.2d at 106 (holding prosecutor's comment in closing argument "that the jury should be concerned about returning defendant to the community was improper"); *People v. Brown*, 817 N.Y.S.2d 139, 140 (App. Div. 2006) (holding prosecutor's "public safety arguments" to jury were improper).

Although the statements made by the prosecutor were objectionable, prosecutorial misconduct is not, standing alone, a due process violation. As noted above, only when the prosecutor's conduct deprives the defendant of

a fair trial is the right to procedural due process denied. We conclude based on our review of the entire record the defendant was not denied a fair trial. *See Young,* 470 U.S. at 11, 105 S. Ct. at 1044, 84 L. Ed. 2d at 10 (stating "statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial"). The evidence against the defendant was strong, the comments did not go to a central issue in the case, and the improper statements by the prosecutor were isolated. In addition, the jurors were instructed they were to decide the defendant's guilt or innocence "from the evidence and the law in these instructions," and that evidence did not include "[s]tatements, arguments, and comments by the lawyers."

At this juncture, we briefly address a related argument made by the defendant with respect to the jury instructions. Musser argues his attorney should at least have requested that the court give the jury the following instruction: "The duty of the jury is to determine if the defendant is guilty or not guilty. In the event of a guilty verdict, you have nothing to do with punishment." The defendant contends this instruction would have mitigated the effect of the prosecutor's inappropriate statements. We do not think counsel failed to perform an essential duty when he opted not to request this instruction. As we have already determined, the defendant was not prejudiced by the improper statements made by the prosecutor. Therefore, we cannot say trial counsel was duty bound to request an instruction arguably to avoid the inconsequential effect of the prosecutor's misconduct.

In summary, we frown upon the prosecutor's improper appeal to the jury to convict the defendant for reasons other than his guilt as established by the State's evidence. But in the context of the entire record, we cannot say the defendant was denied a fair trial. Therefore, defense counsel did not

fail to perform an essential duty when he did not claim a due process violation at trial.

V. *Conclusion.*

There is no merit in the defendant's constitutional challenges to section 709C.1 defining the crime of criminal transmission of HIV and to the punishment a conviction of that offense carries. The statute does not violate defendant's freedom of speech. It is not unconstitutionally vague, on its face or as applied to the defendant, in its description of the proscribed "intimate contact." Section 709C.1 is not overbroad because it does not infringe on a substantial amount of constitutionally protected conduct. Moreover, the statute does not violate the defendant's substantive due process rights by unconstitutionally infringing on his right of privacy. The sentence imposed for this crime does not constitute cruel and unusual punishment. In view of the serious health risk the defendant's conduct poses to the victim of his crime, the twenty-five-year sentence does not raise an inference of gross disproportionality. Therefore, the district court did not err in overruling the defendant's motion to dismiss.

The trial court properly admitted the laboratory reports of the defendant's HIV testing under the business records exception to the hearsay rule. The State adequately authenticated these reports through the testimony of an epidemiologist employed by the department of public health, the official custodian of these records.

As a matter of law, the defendant cannot prevail on his ineffective-assistance-of-counsel claims. The admission of the hearsay test results contained in the lab reports did not violate the defendant's confrontation rights because these statements were nontestimonial. Consequently, trial counsel did not fail to perform an essential duty by not objecting to the lab reports on the basis of the Confrontation Clause. With respect to the

defendant's ineffective-assistance claim based on counsel's failure to object to prosecutorial misconduct, the record shows the prosecutor made improper statements when addressing the jury. Notwithstanding the objectionable nature of the prosecutor's comments, these comments were not so pervasive as to deny the defendant a fair trial. The defendant's ineffective-assistance-of-counsel claims are not preserved.

Finding no basis for reversal, we affirm the defendant's conviction and sentence.

**AFFIRMED.**