**IN THE COURT OF APPEALS OF IOWA**

No. 14-1433
Filed July 22, 2015

**IN THE MATTER OF THE
GUARDIANSHIP OF G.M.,**

**G.M., Ward/Appellant.**

_____

Appeal from the Iowa District Court for Appanoose County, Annette J. Scieszinski, Judge.

A ward with intellectual disabilities appeals a district court's denial of his motion to modify his residence. **AFFIRMED.**

Julie R. De Vries of De Vries Law Office, Centerville, for appellant.

Jonathan Willier, Centerville, guardian ad litem for ward.

Bradley M. Grothe of Craver & Grothe, L.L.P., Centerville, for guardian and conservator.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, J.**

G.M., diagnosed with mental retardation and developmental disability, was appointed a guardian and conservator. The guardian placed him in a home under the auspices of a nonprofit organization charged with caring for mentally challenged and chronically mentally ill individuals. The "Home and Community Based Services program" furnished twenty-four hour care.

G.M. applied to change his living arrangement to an independent apartment with hourly services. Following trial, the district court denied the application. G.M. appealed.

G.M. contends the district court (1) should have allowed him to live in a less restrictive environment; (2) failed to consider alternative third-party assistance; and (3) erred in admitting hearsay evidence. Our review is de novo. Iowa Code § 633.33 (2013), Iowa R. App. P. 6.907. Under this standard,

> evidence, which under the ordinary rules of evidence applicable to a civil trial would be excluded as hearsay, lacking a proper foundation, improper opinion evidence, or not the best evidence, is admissible in such proceedings and the nature of the evidence is to be considered as it affects its probative value rather than its admissibility.

*Harter v. State*, 149 N.W.2d 827, 829 (Iowa 1967). "[O]bjections will be considered in relation to the weight to be given the evidence rather than its admissibility." *Id.*

## I.    *Less-Restrictive Residence*

As a preliminary matter, we must decide what standards govern G.M.'s application. The district court provided invaluable assistance by seeking and obtaining clarification of the disparate statutory standards governing guardianship

proceedings. *See* Iowa Code §§ 633.635(5) (authorizing a court to modify the respective responsibilities of the guardian and ward "upon a proper showing" and incorporating the standards of section 633.551 "to the modification proceedings"), 633.551(3) (stating "In a proceeding to *terminate* a guardianship or conservatorship, if the ward is the petitioner, the ward shall make a prima facie showing of some decision-making capacity. Once a prima facie showing is made, the burden of persuasion is on the guardian or conservator to show by clear and convincing evidence that the ward is incompetent" but saying nothing about proceedings to *modify* guardianships if the ward is the petitioner (emphasis added)), 633.675 (referenced by section 633.635(5) as applicable to modification proceedings but again referring to burden in proceedings to terminate guardianships). G.M. and the guardian agreed G.M.'s application for a change of residence was essentially a request to modify the unlimited guardianship created earlier. They further agreed G.M. would have to make a prima facie showing of some decision-making capacity and, if this showing was made, the guardian would have the burden of persuading the court "that the full guardianship should proceed without limitation."

On appeal, G.M.'s guardian ad litem "concedes that at trial [G.M.] met his initial burden and made a prima facie showing that he has some decision-making capacity." Accordingly, the only issue before us is whether the guardian carried his burden of persuading the district court that the guardianship should remain unlimited, leaving the decision of the ward's residence with the guardian.

At trial, the guardian asserted he would have to prove the statutory requirements of section 633.552(a). This provision addresses the appointment of

guardians but is referred to in section 633.675(1)(c), a provision governing termination of guardianships. Section 633.675(1)(c) requires the guardian to allege the ward "[i]s a person whose decision-making capacity is so impaired that the person is unable to care for the person's personal safety or to attend to or provide for necessities for the person such as food, shelter, clothing, or medical care, without which physical injury or illness might occur." The district court concluded the guardian satisfied his burden. On our de novo review, we agree.

G.M. testified he was sixty-six years old. He had been under a guardianship since he was fifty-nine. At the time of the appointment, he was malnourished, living in unhygienic conditions, and unable to manage his finances.

A physician assistant who treated and befriended G.M. in 2005 and 2006 testified G.M. recognized his inability to manage many aspects of daily living and asked her to assist in obtaining services and the appointment of a guardian. She opined G.M. needed twenty-four hour monitoring "[b]ecause of his current physical and his mental disabilities." She further opined hourly services would not be adequate to ensure his safety.

G.M.'s guardian seconded this opinion. He testified to "several episodes when [G.M.] has fallen or been disoriented when if somebody hadn't been there, who knows what could have happened." He also agreed with the physician's assistant that G.M. had "a real problem with [] making executive decisions," which would "continue to be a problem." He described G.M. as "pleasant" and able to "interact[] well with people" but possessed of "a tendency to think he is more capable than he is."

A supervisor at an organization providing services to G.M. catalogued the risks of living independently, including G.M.'s inability to follow-up with medical needs, malnutrition, poor hygiene, and exploitation by others. Hourly services, in her view, would not alleviate the risks, particularly those associated with his medical conditions. She opined the progress he made was "due to the staff . . . available to him" and G.M. was "in the most appropriate setting at this time."

We recognize G.M. was the most self-sufficient of the three residents in the home. He traveled alone to and from his place of employment, attended a medical visit on his own, and cooked and cleaned without assistance. Understandably, then, he chaffed at the restrictions placed upon him. But the restrictions were minimal under the circumstances and addressed issues relating to his health and safety. On our de novo review, we conclude the district court appropriately concluded the guardian met his burden, and properly declined to modify the guardianship to allow G.M.'s placement in an independent living environment.

## II. Alternative Third-Party Assistance

Iowa Code section 633.551(4) states,

> In proceedings to establish, modify, or terminate a guardianship or conservatorship, in determining if the proposed ward or ward is incompetent as defined in section 633.3, the court shall consider credible evidence from any source to the effect of third-party assistance in meeting the needs of the proposed ward or ward. However, neither party to the action shall have the burden to produce such evidence relating to third-party assistance.

See also Iowa Code § 633.635(4) (authorizing court to consider "the availability of third-party assistance to meet the needs of the ward or proposed ward"). G.M. contends the district court failed to consider alternative service providers. To the

contrary, the record is replete with evidence concerning the efficacy of existing services and the availability of alternative services.

The district specifically addressed G.M.'s dissatisfaction with the current living arrangement and his proposal for hourly services with another provider. While the court questioned the credibility of certain witnesses who testified on behalf of the existing service provider, the court nonetheless found G.M. in need of the twenty-four hour services he was currently receiving. We concur in the court's findings, particularly where the alternate, "more objective" provider G.M. solicited found his existing services appropriate. We conclude the district court considered third-party assistance in meeting the needs of the proposed ward.

### III. Hearsay Evidence

G.M. asserts the district court erred in admitting a psychological report. He challenges the foundation for the document and contends the document contains hearsay. The report, prepared by a psychologist who did not appear at trial, was admitted through the executive director of the organization providing G.M.'s existing services. She testified the organization was required by law to maintain records showing eligibility of the clients for the services and the eligibility document in this case was the psychological evaluation. The district court admitted the document subject to the objection.

We assume without deciding the guardian laid a proper foundation for the document and the document was admissible under the business-records exception to the hearsay rule. *See State v. Musser*, 721 N.W.2d 734, 750-52 (Iowa 2006); Iowa R. Evid. 5.803(6). On our de novo review, we conclude the

guardian satisfied his burden of persuasion in support of an unlimited guardianship without reliance on the challenged document.

We affirm the district court's denial of G.M's application for modification of the guardianship.

**AFFIRMED.**